PEOPLE v HILL

Docket No. 264361. Submitted January 5, 2006, at Grand Rapids.
Decided January 24, 2006, at 9:05 a.m. Leave to appeal sought.

Brian L. Hill was bound over for trial in the Muskegon Circuit Court
on charges relating to child pornography. Although the defendant
admitted to possession of child sexually abusive materials, he
moved to quash the information relating to counts of making and
producing child sexually abusive material, which charges related
to his downloading of child pornography from Internet sites and
transferring the pornography to recordable compact discs (CD-Rs).
The court, Timothy G. Hicks, J., denied the motion, determining
that editing the downloaded content and transferring it to the
CD-Rs created or made something new that previously did not
exist. The court also determined that the process resulted in the
reproduction or copying of child sexually abusive material, which
is punishable by imprisonment of up to 20 years, rather than the
mere possession of such pornography, which is punishable by
imprisonment of no more than four years. The defendant appealed
by leave granted, arguing that the CD-Rs were only a storage
media for his possession and that the statute proscribing the
making of child sexually abusive material, MCL 750.145c(2), is
unconstitutionally vague because it did not fairly inform him of
the proscribed conduct.

The Court of Appeals *held*:

1. The trial court correctly interpreted MCL 750.145c(2) to
proscribe the downloading of child sexually abusive material from
the Internet to a computer and then copying the material from the
computer onto CD-Rs. In doing so, the defendant was making
copies and reproductions of child sexually abusive material as
proscribed by the statute. The defendant had increased the
amount of existing child pornography, the very thing the Legisla-
ture intended to prevent with the statute. The defendant also
made child sexually abusive materials by creating personal com-
pilations of the downloaded pornography in the CD-Rs.

2. MCL 750.145c(2) is not unconstitutionally vague. The stat-
ute gives fair notice of the proscribed conduct to a person of
ordinary intelligence as ascertainable by reference to judicial

interpretations, the common law, dictionaries, treatises, and the commonly accepted meanings of words. The defendant's conduct was fairly within the constitutional scope of the statute.

Affirmed.

1. CRIMINAL LAW — CHILD SEXUALLY ABUSIVE MATERIALS — INTERNET DOWN-LOADS — RECORDABLE COMPACT DISCS.

Downloading child sexually abusive materials from Internet sites and transferring them to a recordable compact disc for a personal compilation of such materials constitute the unlawful making or copying of child sexually abusive materials, not the mere possession of such materials (MCL 750.145c[2], 750.145c[4]).

2. CONSTITUTIONAL LAW — DUE PROCESS — VAGUENESS — MAKING CHILD SEXUALLY ABUSIVE MATERIALS.

The statute that proscribes the making of child sexually abusive materials gives fair notice of the proscribed conduct to a person of ordinary intelligence and therefore is not unconstitutionally vague (MCL 750.145c[2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Charles F. Justian*, Chief Appellate Attorney, for the people.

*Frank Stanley* for the defendant.

Before: ZAHRA, P.J., and MURPHY and NEFF, JJ.

MURPHY, J. Defendant Brian Lee Hill appeals by leave granted the circuit court's order denying his motion to quash the information in this criminal prosecution that involves, in relevant part, charges related to child pornography. In determining whether the circuit court erred in denying the motion to quash, we are required, as were the district and circuit courts, to interpret MCL 750.145c(2) of the Michigan Penal Code, in particular the language regarding the making and producing of child sexually abusive material. We hold that the circuit court correctly interpreted the statute and that the

evidence presented at the preliminary examination supports the felony charges pursued by the prosecution under MCL 750.145c(2). There is sufficient evidence to support the information charging that defendant was involved in the making and producing of child sexually abusive material as contemplated by the plain language of MCL 750.145c(2). We additionally hold that MCL 750.145c(2) is not unconstitutionally vague. Accordingly, the circuit court did not commit error in denying the motion to quash the information, and we affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant was charged with multiple counts of installation of a device for observing, photographing, or eavesdropping in a private place, MCL 750.539d; multiple counts of arranging for, producing, making, or financing child sexually abusive material, MCL 750.145c(2); and multiple counts of using a computer to commit a crime, MCL 752.796.

Two witnesses testified on behalf of the prosecution during defendant's preliminary examination. The first witness was a male foreign exchange student who had previously stayed at defendant's home, and the second witness was Dean Lohman, a detective who participated in a search of defendant's home. The exchange student's testimony focused on the charges against defendant related to the installation of a device for observing in a private place. He identified several videotapes taken of him without his knowledge while he was showering in defendant's bathroom. Detective Lohman later identified a CD (compact disc) player seized from defendant's bathroom in which defendant had allegedly hidden a video camera in order to monitor and tape individuals, including foreign exchange students, while

they used his shower. The charges related to this activity are not at issue in this appeal.

Detective Lohman testified with respect to his participation in a search of defendant's home. He explained that he had advised defendant that the police had information that defendant was videotaping foreign exchange students and others who used his bathroom. Lohman indicated that he followed defendant to his home as voluntarily arranged and that defendant was very cooperative with the police. In fact, defendant pointed out the CD player and hidden camera to the police during the search. Beyond the CD player, video camera, and numerous videotapes allegedly depicting persons using his bathroom and shower, Lohman also found approximately 50 CD-Rs in defendant's bedroom.

Detective Lohman explained that a CD-R[1] is a blank compact disc that an individual can purchase, and onto which pictures, movie or video files, and various other digital images, information, and data can be "burned,"[2] or saved, through the use of a computer. According to Lohman, defendant told him that the CD-Rs contained pornographic pictures of minors, preteens, and teenagers. The detective further testified that defendant admitted that he had downloaded[3] the child pornography, including pictures and videos of mostly male individuals, from Russian websites and then made or compiled the CD-Rs. Lohman agreed that the police had no information or evidence that defendant took any of the

---

[1] CD-R stands for "compact disc—recordable."

[2] One definition of the term "burn" is "to record data on (a compact disc)." *Random House Webster's College Dictionary* (2001).

[3] "Download" means "to transfer (software or data) from a computer to a smaller computer or a peripheral device." *Random House Webster's College Dictionary* (2001).

original pictures or made any of the original videos found on the CD-Rs.

Detective Lohman estimated that, on the 22 CD-Rs that he had inspected so far, he found over 3,000 deviant photographs depicting nude children, children engaged, alone or with other children, in sexual acts and conduct, and children posed in sexually explicit positions. Several photographs printed from the CD-Rs were admitted into evidence. The detective additionally testified that the police had opened five videos from the CD-Rs that depicted 12- to 13-year-old boys engaged in sexual acts. The prosecutor submitted several CD-Rs as evidence against defendant, alleging that he had made or produced child sexually abusive material in violation of MCL 750.145c(2), through the use of a computer in violation of MCL 752.796 and MCL 752.797(3)(f).

Before addressing the arguments made by the prosecution and defendant relative to the preliminary examination, bindover, and the subsequent motion to quash, it is necessary to quote the language from the pertinent statutes in order to give context to the parties' arguments.

MCL 750.145c(2) provides:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or *a person who arranges for, produces, makes, or finances,* or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or *child sexually abusive material* is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child

sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

MCL 750.145c(1)(m) defines "child sexually abusive material" as follows:

"Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; *or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.* [Emphasis added.]

MCL 752.796 and MCL 752.797(3)(f) criminalize the use of a computer in committing a crime and punishes offenders according to the underlying felony, which, in this case, is punishable by up to 20 years in prison pursuant to MCL 750.145c(2).

The prosecutor requested the district court to bind defendant over on all counts. Regarding the counts related to the CD-Rs, the prosecutor argued that MCL 750.145c(2) encompassed activity where an individual arranges for, produces, makes, or finances child sexually abusive material, and when defendant took the blank CD-Rs and burned images on them, he clearly created child sexually abusive material. The prosecutor noted that the statute defines "child sexually abusive material" as including any reproduction, copy, or print

of a photograph depicting a child engaged in a sexual act. The prosecutor argued that defendant "made" or "produced" child sexually abusive material by copying, reproducing, or burning the images onto a CD-R.

Defendant argued against bindover on the counts related to the CD-Rs, contending that the burning or saving of images or data onto a CD-R does not rise to the level of producing, creating, manufacturing, or making child sexually abusive material. Defendant further argued that the transference of the images from the Internet to his computer's hard drive and then to the CD-Rs constituted nothing more than the storage of data. Defendant maintained that, at most, there was only evidence of possession of child pornography pursuant to MCL 750.145c(4), which provides in relevant part:

> A person who knowingly possesses any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.[4]

The district court bound defendant over for trial on all counts. Defendant then filed a motion in circuit court to quash the bindover or information on the counts related to the CD-Rs. Defendant argued that MCL 750.145c(2) does not apply to simple possession of child pornography by a private individual who was not involved in the creation of the original images. De-

---

[4] MCL 750.145c(3) makes it a seven-year felony for distributing, promoting, or financing the distribution or promotion of "child sexually abusive material."

fendant further maintained that the denial of his motion to quash would effectively and wrongfully extend the 20-year felony provided in MCL 750.145c(2) to individuals who had no contact with the abused children, who did not produce the original child pornography, and who did not distribute child pornography to others. Defendant argued that the district court erred as a matter of law by concluding that defendant's actions fit within § 145c(2) of the statute. Defendant also asserted that the statute was void for vagueness because it did not make clear what activity was proscribed. According to defendant, if the statute is interpreted as argued by the prosecution, it would not sufficiently notify a person that, by burning an image onto a CD-R for future viewing, the person has suddenly made himself or herself as culpable as the person who originally enticed the child to engage in a sexual act.

The prosecutor argued that by criminalizing all production of child pornography, including the making of copies of such materials, the Legislature was acting to stop all manufacturing of such material and the ability of persons to swap, exchange, and otherwise increase their "collections" of child pornography that has grown with the increased use of computers and the relative ease with which persons can now share such materials. The prosecutor further contended that where a person has a picture that constitutes child sexually abusive material, the person possesses it, but, once the person makes copies or reproductions of that picture, the person has now made or produced child sexually abusive material. The prosecutor added that, had the Legislature wanted to enact an exception for persons making copies for their own personal use, as it did regarding drug use, it knew how to so proceed, but the Legislature chose not to include such an exception. The

prosecutor differentiated between someone who simply views an image on the computer, which automatically stores the image in a temporary Internet file, and someone who then burns or copies that image to another medium, thereby making or producing more child sexually abusive material.

The circuit court denied the motion to quash the information. The court initially noted that MCL 750.145c established three forms of illegal behavior related to child sexually abusive material, i.e., creation, distribution, and possession. After reviewing the dictionary definition of the word "make," the circuit court stated that the bottom line was that, following the mechanical and technical act of burning images onto the CD-Rs, something new was created or made that did not previously exist. The court also turned to the statutory definition of "child sexually abusive material," MCL 750.145c(1)(m), which speaks of reproductions and copies, and it found that one who burns a computer image onto a CD-R is making a reproduction or copy. The court ruled that "the crime is committed when the person clicks the mouse to reproduce the image onto the CD[-]R." The circuit court also rejected defendant's argument that MCL 750.145c(2) was void for vagueness. Defendant filed an application for leave to appeal, and this Court granted the application.

## II. APPELLATE ANALYSIS

### A. STANDARDS OF REVIEW AND PRINCIPLES GOVERNING PRELIMINARY EXAMINATIONS

A circuit court's ruling regarding a motion to quash an information and the district court's decision to bind over a defendant are reviewed to determine whether the district court abused its discretion in making its deci-

sion. *People v Hotrum*, 244 Mich App 189, 191; 624 NW2d 469 (2000); *People v Riggs*, 237 Mich App 584, 587; 604 NW2d 68 (1999); *People v Hamblin*, 224 Mich App 87, 91; 568 NW2d 339 (1997). However, where the decision entails a question of statutory interpretation, i.e., whether the alleged conduct falls within the scope of a penal statute, the issue is a question of law that we review de novo. *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001); *Hotrum, supra* at 191; *Riggs, supra* at 587-588. The primary focus of this appeal involves statutory construction of MCL 750.145c(2)—whether defendant's actions fit within the scope of this statutory provision. Defendant also argues that MCL 750.145c(2) is unconstitutionally vague, and this Court reviews de novo a trial court's determination concerning the constitutionality of a statute. *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001).

The primary function of a preliminary examination is to determine whether a felony has been committed and, if so, whether there exists probable cause to believe that the defendant committed the felony. *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003), citing MCL 766.13. Probable cause requires evidence sufficient to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt. *Yost, supra* at 126. The magistrate, however, need not be without doubts regarding guilt. *Id.* Following the conclusion of the preliminary examination, if it appears to the district court that there is probable cause to believe that a felony was committed and that the defendant committed it, the court must bind the defendant over for trial. MCL 766.13; MCR 6.110(E).

### B. GUIDING PRINCIPLES OF STATUTORY CONSTRUCTION

Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *People v*

*Tombs,* 472 Mich 446, 451; 697 NW2d 494 (2005) (opinion by KELLY, J.); *Shinholster v Annapolis Hosp,* 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. *Id.* at 549. In ascertaining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *Id.* We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id.* This Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp,* 264 Mich App 156, 162; 691 NW2d 459 (2004). "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Shinholster, supra* at 549 (citation omitted). If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Tombs, supra* at 451; *Shinholster, supra* at 549. "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002). Statutory language, unambiguous on its face, can be rendered ambiguous through its interaction with and relationship to other statutes. *People v Valentin,* 457 Mich 1, 6; 577 NW2d 73 (1998). If statutory provisions can be construed in a manner that avoids conflict, then that construction should control the analysis. See *People v Webb,* 458 Mich 265, 274; 580 NW2d 884 (1998). "We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature." *Macomb Co Prosecutor v Murphy,* 464 Mich 149, 159-160; 627 NW2d 247 (2001).

## C. DISCUSSION

The parties' arguments on appeal parallel and mimic those made in the lower courts as recited by us above, and, thus, we shall not summarize those arguments again in our discussion. Rather, we shall proceed with our analysis, keeping in mind the parties' positions. We initially note that there is no dispute between the parties that the CD-Rs, and the photographs and videos contained thereon, constitute child sexually abusive material as defined in MCL 750.145c(1)(m). The disagreement lies with whether it can be said that defendant made or produced the material as contemplated by MCL 750.145c(2).

The pertinent language of MCL 750.145c(2) punishes, by way of a 20-year felony, "a person who arranges for, produces, makes, or finances . . . any . . . child sexually abusive material[.]" The pertinent language of MCL 750.145c(1)(m), which defines "child sexually abusive material," provides that such material includes "any reproduction, copy, or print of . . . a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer generated image" depicting a child engaging in sexual acts enumerated in the statute. Reading these two provisions of MCL 750.145c together, it can be concluded that the Legislature intended to subject a person to a maximum term of 20 years' imprisonment, where the individual "arranges for, produces, [or] makes," § 145c(2), "any reproduction, copy, or print of . . . a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer generated image" depicting a child engaging in sexual acts, § 145c(1)(m). Hence, when defendant allegedly downloaded the child sexually abusive material to his computer from the Russian websites and then copied the

photographs, videos, and images from his computer onto the CD-Rs, he was making or producing copies or reproductions of images depicting children engaged in sexual acts, or in other words, he was making child sexually abusive material as contemplated by MCL 750.145c(2). Regardless of whether defendant's actions are viewed as copying the original photographs and videos, or copying electronic or computer visual images of the downloaded photographs and videos, the fact remains that copies and reproductions were made. Defendant's argument that use of the CD-Rs was just a mechanism by which to store possessed child pornography ignores the reality that the storing of the images was accomplished through the copying or duplication of already existing images that continued to exist after the images were burned onto the CD-Rs. The language of the statute is clear and unambiguous. The decision by the Legislature to specifically include reproductions or copies in defining "child sexually abusive material," which term is then incorporated into § 145c(2), leaves no room for a contrary judicial construction. The Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Tombs, supra* at 451 (opinion by KELLY, J.). To rule as argued by defendant would necessitate ignoring that portion of the statutory definition of "child sexually abusive material" that refers to reproductions and copies, thereby failing to give effect to every word in the statute and rendering the language surplusage or nugatory. Such a construction is not permitted. *Shinholster, supra* at 549; *Bageris, supra* at 162.

Even without consideration of the statutory language regarding copies and reproductions, the evidence presented at the preliminary examination would support charges under MCL 750.145c(2). The evidence reflects that defendant burned the illegal images and videos

onto the CD-Rs, thereby placing child sexually abusive material on new storage devices, the CD-Rs, which material was compiled in a format and manner determined solely by defendant, considering that he personally burned and spliced particular picture and video files onto particular CD-Rs. The CD-Rs, as compiled by defendant, were defendant's own creations; he made child-pornography CD-Rs.[5] The term "make" is defined as follows: "to bring into existence by shaping, changing, or combining material[.]" *Random House Webster's College Dictionary* (2001).[6] Defendant acquired child sexually abusive material through the Internet, and he shaped, formed, and combined the material through placement of various selected pictures, videos, and images onto specific CD-Rs, bringing into existence something that had not previously existed, i.e., distinctly created and compiled child-pornography CD-Rs. Importantly, the definition of child sexually abusive material expressly includes a "computer storage device" that contains photographs and videos depicting children engaged in sexual acts. MCL 750.145c(1)(m). The CD-Rs qualify as computer storage devices containing photographs and videos depicting children engaged in sexual acts. The evidence presented indicated that defendant alone made or produced these CD-Rs. It would be nonsensical to find, even under a narrow

[5] Of course, the ultimate determination whether defendant was guilty beyond a reasonable doubt of violating MCL 750.145c(2) is left to the trier of fact. Our discussion is made in reference to the evidence presented to the district court during the preliminary examination and is only for the purposes of determining whether there existed probable cause to bind defendant over for trial on the charges brought pursuant to § 145c(2).

[6] "[W]e accord undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions in such situations." *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005).

interpretation of the word "make," that defendant did not make child-pornography CD-Rs. As such, there was evidence showing that defendant was making child sexually abusive material.

Given the intricacies of computer and Internet technology, we think it helpful to present an analogy, viewing a simpler scenario in which an individual obtains a magazine containing photographs of children engaging in sexual acts from another person or source. Receipt and retention of the magazine would merely reflect evidence of possession, which would give rise to a four-year felony under MCL 750.145c(4). In this scenario, the amount of child pornography in our society is not increased by transfer of the magazine to another and by the purchaser's mere possession of the magazine. If, however, the person in possession of the magazine makes copies and reproductions of the pornographic material, the person has increased the amount of existing child pornography, or stated differently, has engaged in acts leading to the proliferation of child pornography in our society. Under such circumstances, the person would be guilty of a 20-year felony under the plain language of MCL 750.145c(2) as discussed above. This is essentially what occurred here, except it was accomplished through the use of a computer and CD-Rs. Contrary to defendant's arguments, the evidence showed more than mere possession of child sexually abusive material; the evidence revealed that defendant made copies of possessed material.

Changing the hypothetical example, if a person received through the mail individual photographs of children engaged in sexual acts, i.e., child sexually abusive material, and, without copying or reproducing the photos, compiled them into a bound book of child pornography, the person would also be guilty of a 20-year

felony under the plain language of § 145c(2).[7] This is so because the definition of "child sexually abusive material" specifically includes books that contain photographs and pictures depicting a child engaging in sexual acts. MCL 750.145c(1)(m). In this scenario, the person has made or produced a book of child pornography that did not previously exist. This is comparable to the situation in the case at bar, where there was evidence that defendant created child-pornography CD-Rs that did not previously exist. Once again, defendant's actions went beyond simple possession. We find it reasonable to conclude that the Legislature intended to punish those who are involved with reproducing and copying original child sexually abusive material, which leads to the proliferation of child pornography, and those involved in making and creating books, magazines, and CD-Rs of child pornography that did not previously exist, just as severely as those directly and personally involved with the children who are the focus of the pornography. Indeed, this intent is discerned from a plain reading of the statute.

With respect to defendant's argument that the Legislature never intended to punish at the harshest extreme those who utilize child sexually abusive material merely for personal use, the argument finds no support in the statutory language. A person could be directly and personally involved with children and the production of child sexually abusive material, e.g., by photographing or filming coerced children, and thus be guilty

---

[7] We conceive of situations in which numerous independent photographers personally induce children to engage in sexual conduct, photograph the activity, and then forward the material to a person who compiles the material into book or magazine form. Certainly, the individual who compiles the material is guilty of a 20-year felony despite a lack of direct involvement with the children. We recognize that, in all likelihood, the process would also involve copying and reproducing the photographs.

of a 20-year felony under MCL 750.145c(2), yet have every intention to keep the material for personal use only. This intention, however, is irrelevant for purposes of the statute because § 145c(2) does not make pertinent or even reference the matter of whether the created material will be used personally or shared with others. In that same vein, the plain language of § 145c(2) does not make it necessary for the prosecution to show that a defendant made or produced multiple photographs, videos, books, or computer storage devices, or copies thereof, showing children engaged in sexual acts. While it might affect the number of counts charged against a defendant, the person taking one picture of a child engaged in a sexual act or making one copy of child sexually abusive material is as guilty of a 20-year felony as the person who takes 50 pictures or makes 50 copies.

Finally, it is necessary to address the lead opinion in our Supreme Court's decision in *Tombs* in order to determine whether it affects our holding. In *Tombs*, the defendant was a field technician for Comcast OnLine, and the company furnished him with a laptop for employment-related use. The defendant eventually quit his job with Comcast, and he was informed that the laptop had to be returned on the day his employment ceased. Another Comcast employee retrieved the laptop from the defendant and returned it to Comcast's office. Files containing child pornography were discovered on the laptop by Comcast and police technicians. The defendant indicated to the police his belief that when a Comcast employee leaves employment, new computer programs are installed in the ex-employee's computer. The defendant did not think anybody would go through the files he had created, and he presumed that the hard drive would be wiped clean before the installation of new software. He was convicted, in part, of distributing

or promoting child sexually abusive material, MCL
750.145c(3). *Tombs, supra* at 448-451 (opinion by
KELLY, J.). The lead opinion stated that MCL
750.145c(3) "requires that an accused be shown to have
had criminal intent to distribute or promote[,]" and
that "the evidence presented to the trial court was
insufficient to prove that intent." *Tombs, supra* at 448.
The Court stated:

> If the statute contained no *mens rea* element, a person
> lacking any criminal intent could be convicted and sen-
> tenced to seven years in prison and a fine of $50,000. Or, as
> in the present case, he could be found criminally liable for
> returning a laptop owned by his employer, intending only
> that the offending material be destroyed.
>
> If this were the law, Comcast employees who transferred
> defendant's . . . computer files among themselves and ulti-
> mately to the police, knowing what was in them, would
> have violated MCL 750.145c(3). It would be immaterial
> that they had no criminal intent. Such a reading of the
> statute would frustrate its purpose.
>
> For all of the reasons given, we conclude that the
> Legislature intended that criminal intent to distribute be
> an element of MCL 750.145c(3). [*Tombs, supra* at 458-459
> (opinion of KELLY, J.).]

The lead opinion discussed the evidence that was
presented to the jury in support of the conviction and
found it inadequate, stating:

> Although defendant intended to distribute the laptop
> containing child sexually abusive material to his former
> employer, no evidence suggests that he distributed the
> material with a criminal intent. There was no evidence that
> defendant made anyone at Comcast aware, or attempted to
> make anyone aware, of the presence of the material. To the
> contrary, there is evidence that defendant neither intended
> nor expected anyone at Comcast to discover or view the
> material. [*Id.* at 459-460.]

Returning to the case before us today, MCL 750.145c(2) requires that a defendant know or have reason to know that a child is involved or being depicted relative to the material claimed by the prosecution to be child sexually abusive material. Defendant told the police that the CD-Rs contained sexual pictures of children; therefore, the knowledge requirement was met. With respect to criminal intent, while the defendant in *Tombs* may not have had any intent to distribute child sexually abusive material to other persons, the evidence here reflects that defendant clearly intended to burn or copy child sexually abusive material onto the CD-Rs and that he intended to create or make CD-Rs that contained child pornography. There is no evidence suggesting that defendant was unaware that he was burning or copying child sexually abusive material or that he was unaware that he was creating pornographic CD-Rs that contained sexual images of children. The facts in *Tombs* are easily distinguishable. We view the argument presented by defendant as not truly a claim that he lacked criminal intent; rather, it is a claim that he was unaware that his criminal actions constituted the making or producing of child sexually abusive material punishable by up to 20 years' imprisonment. *Tombs* does not stand for the proposition that ignorance of the law supports a reduction or dismissal of charges.

We note that the lead opinion in *Tombs* recognized that the "Legislature expressly separated the crimes of production of child sexually abusive material, distribution or promotion of the material, and simple possession," and the Court rejected an argument that mere possession could equate with promotion. *Tombs, supra* at 464. We are not ruling that possession of child sexually abusive material equates with the making and production of such material. Those are two distinct crimes under MCL 750.145c. As reiterated throughout

this opinion, the evidence showed more than mere possession of child sexually abusive material.

In sum, we hold that the circuit court correctly interpreted MCL 750.145c(2) and that the evidence presented at the preliminary examination was sufficient to find probable cause that MCL 750.145c(2) was violated and that defendant committed the violation. Accordingly, the district court did not abuse its discretion in binding defendant over for trial, and the circuit court did not err in denying the motion to quash the information.

With respect to the argument that MCL 750.145c(2) is unconstitutionally vague because it does not give sufficient notice of what conduct is prohibited, we disagree.

A statute may be challenged for vagueness on any of three grounds: (1) that it is overbroad and impinges on First Amendment freedoms, (2) that it does not provide fair notice of the conduct proscribed, or (3) that it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated. *People v Russell,* 266 Mich App 307, 310; 703 NW2d 107 (2005).[8] At issue here is whether the statute gives fair notice of the proscribed conduct. In testing a statute challenged as unconstitutionally vague, the entire text of the statute should be examined and the words of the statute should be given their ordinary meanings. *People v Sands,* 261 Mich App 158, 161; 680 NW2d 500 (2004). Judicial constructions of the statute should also be considered. *Rogers, supra*

---

[8] "The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law. US Const, Am XIV; Const 1963, art 1, § 17." *State Treasurer v Wilson (On Remand),* 150 Mich App 78, 80; 388 NW2d 312 (1986).

at 94. In general, a criminal defendant may not defend on the basis that a statute is unconstitutionally vague where the defendant's conduct is fairly within the constitutional scope of the statute. *Id.* at 95. Statutes are presumed to be constitutional and are so construed unless their unconstitutionality is clearly and readily apparent. *Id.* at 94.

As noted by this Court in *Sands, supra* at 161:

> To afford proper notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. A statute cannot use terms that require persons of ordinary intelligence to speculate regarding its meaning and differ about its application. For a statute to be sufficiently definite, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words. [Citations omitted.]

As indicated in our discussion regarding the issue of statutory construction, the plain language of MCL 750.145c(2) criminalizes the production or making of any child sexually abusive material and the statute specifically defines "child sexually abusive material" to include "any reproduction, copy, or print" of pictures or images depicting children engaging in or appearing to engage in listed sexual acts, MCL 750.145c(1)(h) and (m). Therefore, pursuant to this plain language, when one "makes" a "copy" or "reproduction" of a picture or image showing children engaged in sexual acts, he or she has made child sexually abusive material, which, according to MCL 750.145c(2), is a felony punishable by up to 20 years' imprisonment. Moreover, and consistently with the statutory language, the act of "making" child sexually abusive material clearly encompasses the creation of CD-Rs containing various photographs and videos of children engaged in sexual acts as selectively

compiled by a person, where such CD-Rs did not previously exist. The statute gives a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited as ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, and the commonly accepted meanings of words. *Sands, supra* at 161. Defendant's conduct was fairly within the constitutional scope of MCL 750.145c(2); therefore, the statute is not void for vagueness.

### III. CONCLUSION

The circuit court correctly interpreted MCL 750.145c(2), and the evidence presented at the preliminary examination was sufficient to find probable cause that MCL 750.145c(2) was violated and that defendant committed the violation. Furthermore, the circuit court did not err in ruling that MCL 750.145c(2) was not unconstitutionally vague, where the plain language of the statute reasonably and fairly informed defendant of the proscribed conduct. Accordingly, the circuit court did not err in denying the motion to quash the information.

Affirmed.