*In re* INVESTIGATIVE SUBPOENAS

Docket No. 284993. Submitted September 2, 2009, at Lansing. Decided November 19, 2009, at 9:05 a.m.

The Grand Traverse County Prosecuting Attorney petitioned the Grand Traverse Circuit Court for authorization to issue investigative subpoenas pursuant to MCL 767A.2(1) to investigate alleged violations of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.*, with regard to a February 7, 2007, election conducted by Acme Township. The court, Philip E. Rodgers, Jr., J., authorized the subpoenas. Two of the recipients of the subpoenas, Meijer, Inc., and Dickinson Wright Employees, refused to produce information sought by the subpoenas. The prosecutor filed a motion to compel compliance by those recipients (hereafter respondents). Respondents moved to quash the subpoenas and dismiss the proceedings, arguing that the MCFA invests the Secretary of State with the exclusive jurisdiction to investigate and enforce campaign finance law violations, that the prosecutor had no legal basis for seeking the subpoenas, and that the circuit court had no authority to issue or enforce the subpoenas. The court granted the motion to dismiss for lack of subject-matter jurisdiction. The prosecuting attorney appealed.

The Court of Appeals *held*:

1. The Legislature enacted both civil and criminal penalties for violation of MCFA requirements. The MCFA empowers the Secretary of State to investigate, enforce, and endeavor to prevent election campaign finance improprieties, and to assess civil fines. The Secretary of State's enforcement armamentarium consists of three procedural courses of action: informal methods such as conferences, conciliation, or persuasion; commencement of a hearing to address potential civil violations; and referral to the Attorney General for the enforcement of a criminal penalty. The Secretary of State may also enter into a conciliation agreement with the person involved, and the agreement, unless violated, is a complete bar to any further action with respect to matters covered in the agreement.

2. The Legislature, by enacting the MCFA, did not intend to divest county prosecutors of their duty to investigate and

prosecute election law crimes. The Legislature did not intend to delegate to the Secretary of State sole discretion over whether alleged MCFA violators should face criminal prosecution.

3. The Secretary of State's broad authority to remedy election law infractions does not encompass the prosecution of election-law-related crimes. The Secretary of State has the statutory obligation to investigate and report election law violations and the responsibility of enforcing campaign finance laws and may commence a hearing to determine whether a civil violation of the act has occurred and impose a civil fine. However, the MCFA contemplates the potential imposition of criminal liability for violators regardless of whether the Secretary of State has imposed a civil fine.

4. MCL 169.215 and 169.254 evince the Legislature's intent to create two distinct methods of enforcing the MCFA: civil procedures pursued by the Secretary of State and criminal prosecutions initiated by county prosecutors and the Attorney General.

5. Although the Secretary of State possesses the discretion to refer violators to the Attorney General for prosecution, the MCFA does not provide that the referral process constitutes the sole path to criminal prosecution or supplants a county prosecutor's traditional criminal law enforcement powers.

6. The Legislature, by enacting MCL 169.215, did not intend to delegate to civil authorities the exclusive jurisdiction to enforce criminal provisions concomitantly enacted to punish regulatory transgressors.

7. The Secretary of State possesses no legal authority to address criminal liability in a conciliation agreement like the one reached in this matter, therefore, a conciliation agreement may not bar the prosecutor from investigating felony charges.

Reversed and remanded.

1. ELECTIONS — MICHIGAN CAMPAIGN FINANCE ACT — CIVIL FINES — CRIMINAL PROSECUTIONS.

The Michigan Campaign Finance Act creates a framework for remedying and punishing campaign finance law violations and empowers the Secretary of State to investigate, enforce, and endeavor to prevent election campaign finance improprieties and to assess civil fines and enter into conciliation agreements; the act does not delegate to the Secretary of State the sole discretion whether violators should face criminal prosecution or supplant the traditional criminal law enforcement powers of county prosecuting attorneys or the Attorney General to prosecute crimes (MCL 169.201 et seq.).

2. ELECTIONS — MICHIGAN CAMPAIGN FINANCE ACT — SECRETARY OF STATE — CONCILIATION AGREEMENTS.

> The Secretary of State may enter into a conciliation agreement with a person believed to have violated provisions of the Michigan Campaign Finance Act and, unless the agreement is violated, the agreement is a complete bar to any further action with respect to matters covered in the agreement; the Secretary of State is not authorized to address criminal liability in a conciliation agreement (MCL 169.215).

*Alan R. Schneider*, Prosecuting Attorney, for the Grand Traverse County Prosecuting Attorney.

*Miller Johnson* (by *James S. Brady* and *Jon R. Muth*) and *Honigman Miller Schwartz & Cohn, LLP* (by *John D. Pirich* and *Andrea L. Hansen*), for Meijer, Inc.

*Barris, Sott, Denn & Driker, P.L.L.C.* (by *Sharon M. Woods*), for Dickinson Wright Employees.

Before: JANSEN, P.J., and FORT HOOD and GLEICHER, JJ.

GLEICHER, J. In this action arising from petitioner Grand Traverse County Prosecuting Attorney's investigation of a potential violation of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.*, petitioner appeals as of right a circuit court order dismissing the case for lack of jurisdiction. We reverse and remand for further proceedings.

### I. UNDERLYING FACTS AND PROCEEDINGS

On February 7, 2007, Acme Township conducted an election to determine whether to recall any township trustees. Approximately a year later, the prosecutor filed a petition in the circuit court seeking authorization to issue investigative subpoenas pursuant to MCL 767A.2(1), which states, "A prosecuting attorney may

petition the district court, the circuit court, or the recorder's court in writing for authorization to issue 1 or more subpoenas to investigate the commission of a felony as provided in this chapter." The petition averred that the prosecutor's investigation centered on an alleged violation of MCL 169.254, which prohibits corporations, their agents, and certain others from making election campaign contributions. The circuit court authorized the investigative subpoenas, finding "reasonable cause to believe a felony has been committed and those persons who are the subject of the petition may have knowledge regarding the felony."

Two subpoena recipients, respondents Meijer, Inc., and Dickinson Wright Employees, refused to produce information sought by the subpoenas. The prosecutor then filed in the circuit court a motion to compel respondents' compliance. Respondents moved to quash the subpoenas and to dismiss the proceeding for want of jurisdiction. According to respondents, because the MCFA invests the Secretary of State with the exclusive jurisdiction to investigate and enforce campaign finance law violations, the prosecutor had no legal basis for seeking the subpoenas and the circuit court did not have authority to issue or enforce the subpoenas. In a written opinion and order, the circuit court explained, as follows in relevant part, that it was granting respondents' motion to dismiss the case "for lack of subject matter jurisdiction":

> The MCFA is designed to ensure openness and honesty in our elections by mandating certain reporting requirements and by prohibiting corporations (including law firms operating as limited liability companies) or their lawyers or agents from making monetary contributions to influence elections. Thus, enforcement of the MCFA is unquestionably a state interest. The Legislature clearly intended to

vest exclusive jurisdiction for enforcement of the MCFA in the Secretary of State and, upon her request, in the Attorney General.

\* \* \*

[T]he Legislature . . . having vested exclusive jurisdiction in the Secretary of State to investigate and resolve campaign violations or to refer them to the Attorney General for criminal prosecution, the Prosecuting Attorney has no statutory jurisdiction to investigate or prosecute violations. By the same token, this Court did not have jurisdiction to issue the subpoenas at issue or rule on the pending motions. Ironically, the Secretary of State does not have authority to request investigative subpoenas. It seems she will rely on the cooperation of those she is investigating to produce documents, and at this point, full document production has not been made. It seems, then, unlikely that the Secretary of State can adequately and fairly investigate this case without the Attorney General's assistance. Prudence would suggest she enlist his aid. [Citations omitted.]

## II. STANDARD OF REVIEW

"Whether a trial court has subject-matter jurisdiction is a question of law that this Court reviews de novo." *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 472; 628 NW2d 577 (2001). This Court also reviews de novo legal issues of statutory construction. *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 698; 736 NW2d 594 (2007).

## III. ANALYSIS

"The MCFA is designed to ensure openness and honesty in our elections by mandating certain reporting requirements and by prohibiting corporations (including law firms operating as limited liability companies) or their lawyers or agents from making monetary

contributions to influence elections." *Fieger v Cox*, 274 Mich App 449, 451; 734 NW2d 602 (2007). To achieve this goal, the MCFA establishes rigorous rules applicable to certain election campaigns. The act mandates that candidates in applicable elections form candidate committees that include a designated treasurer and identify a financial institution as an official depository for campaign contributions. MCL 169.221(1) through (6). The committee treasurer must "keep detailed accounts, records, bills, and receipts," and bears the responsibility for report preparation and filing. MCL 169.222. The MCFA specifies that one requisite report, a committee's campaign statement, shall contain specific information about "the total amount of contributions received during" a reporting period, comprehensive detail about fund raising efforts, the identities of campaign contributors, and a list of all expenditures. MCL 169.226(1)(b). And MCL 169.254 regulates corporate contributions by generally prohibiting independent corporate expenditures other than those made to ballot question committees.

The Legislature also enacted both civil and criminal penalties for violations of MCFA requirements. For example, a person who fails to form a campaign committee or who commingles campaign committee funds "is subject to a civil fine of not more than $1,000.00." MCL 169.221(13). If a candidate, treasurer, or other designated person neglects to timely file mandatory campaign statements, "that candidate, treasurer, or other designated individual is guilty of a misdemeanor, punishable by a fine of not more than $1,000.00, or imprisonment for not more than 90 days, or both." MCL 169.233(8). "A person who knowingly violates" the MCFA prohibition against the use of campaign funds for purposes other than "qualified campaign expendi-

tures" "is guilty of a felony punishable" by a fine, imprisonment, or both. MCL 169.266(1) and (4).

The MCFA provision at the heart of this case is the act's broad preclusion of corporate contributions. Under MCL 169.254(1), with limited and here inapplicable exceptions, a corporation "shall not make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of a contribution pursuant to [MCL 169.204(3)(a)]." Pursuant to MCL 169.254(4):

> A person who knowingly violates this section is guilty of a felony punishable, if the person is an individual, by a fine of not more than $5,000.00 or imprisonment for not more than 3 years, or both, or, if the person is not an individual, by a fine of not more than $10,000.00.

The question presented here is whether a county prosecutor may enforce the MCFA's criminal penalty provisions where the Secretary of State already had initiated civil proceedings that resulted in a civil fine for the same infraction of MCL 169.254.

The Secretary of State serves as Michigan's "chief election officer" and possesses "supervisory control over local election officials in the performance of their duties . . . ." MCL 168.21. The MCFA commits to the Secretary of State numerous tasks related to the implementation, administration, and enforcement of Michigan's campaign finance laws. The Secretary of State bears responsibility for making available "appropriate forms, instructions, and manuals required" under the MCFA, developing a "filing, coding, and cross-indexing system for the filing of required reports and statements," preparing required "forms, instructions, and manuals," and promulgating rules to implement the MCFA. MCL 169.215(1)(a), (b), (d), (e). Under MCL 169.218(1), the Secretary of State must make

available "an electronic filing and internet disclosure system" permitting the electronic filing of committee statements or reports. When requests for declaratory rulings are adequately supported with statements of facts by the persons submitting the requests, the Secretary of State must issue declaratory rulings concerning the MCFA. MCL 169.215(2).

The MCFA additionally empowers the Secretary of State to investigate, enforce, and endeavor to prevent election campaign finance improprieties, and to assess civil fines. The pertinent portions of MCL 169.215 set forth the following:

> (9) The secretary of state shall investigate the allegations under the rules promulgated under this act. . . .

> (10) If the secretary of state determines that there may be reason to believe that a violation of this act has occurred, the secretary of state shall endeavor to correct the violation or prevent a further violation by using informal methods such as a conference, conciliation, or persuasion, and may enter into a conciliation agreement with the person involved. Unless violated, a conciliation agreement is a complete bar to any further action with respect to matters covered in the conciliation agreement. If the secretary of state is unable to correct or prevent further violation by these informal methods, the secretary of state may refer the matter to the attorney general for the enforcement of a criminal penalty provided by this act or commence a hearing as provided in subsection (11).

> (11) The secretary of state may commence a hearing to determine whether a civil violation of this act has occurred. . . . If after a hearing the secretary of state determines that a violation of this act has occurred, the secretary of state may issue an order requiring the person to pay a civil fine equal to the amount of the improper contribution or expenditure plus not more than $1,000.00 for each violation.

These sections delineate the Secretary of State's civil enforcement armamentarium, which consists of three procedural courses of action: "informal methods such as a conference, conciliation, or persuasion," commencement of a hearing to address potential civil violations, and referral to the Attorney General "for the enforcement of a criminal penalty . . . ." MCL 169.215(10) and (11).

As an adjunct to the informal resolution options described in MCL 169.215(10), this subsection contemplates that the Secretary of State may "enter into a conciliation agreement with the person involved" and that "[u]nless violated, a conciliation agreement is a complete bar to any further action with respect to matters covered in the conciliation agreement." *Id.* The MCFA envisions that the Secretary of State will preferentially utilize administrative conciliation to resolve campaign-finance-related disputes, and that only if the Secretary of State's informal enforcement tools fail to "correct or prevent further violation" may the secretary "refer the matter to the attorney general for the enforcement of a criminal penalty provided by this act or commence a hearing as provided in subsection (11)." MCL 169.215(10). If the Secretary of State conducts a hearing, the MCFA permits the Secretary of State thereafter to assess "a civil fine equal to the amount of the improper contribution or expenditure plus not more than $1,000.00 for each violation." MCL 169.215(11).

The circuit court concluded that because MCL 169.215(10) specifies that the Secretary of State may refer "the enforcement of a criminal penalty" to the Attorney General, the prosecutor did not possess the authority to investigate potential MCFA violations. The prosecutor maintains that the circuit court inaccurately characterized the MCFA's "narrow" informal enforce-

ment procedure as an exclusive remedy for any MCFA violation. Meijer and Dickinson assert that although the MCFA lacks a specific provision assigning to the Attorney General the exclusive authority to enforce criminal violations of the act, the statutory language clearly conveys the Legislature's intent to divest local prosecutors of the power to prosecute campaign finance law crimes. Meijer and Dickinson further assert that because the Secretary of State entered into a conciliation agreement regarding the subject of the prosecutor's investigation, MCL 169.215(10) plainly bars any related criminal prosecution.[1]

"Well-established principles guide this Court's statutory construction efforts." *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 10; 654 NW2d 610 (2002). We begin by examining the specific statutory language under consideration, bearing in mind that

> [w]hen faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. Where the language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. [*Id.* (citations and quotation marks omitted).]

In discerning legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *People v Hill*, 269 Mich App 505, 515; 715 NW2d 301 (2006). We endeavor to avoid interpreting a statute in a manner

---

[1] On May 13, 2008, the Secretary of State issued a press release announcing that Meijer "is paying the largest fine ever assessed under Michigan's Campaign Finance Act as part of agreements resolving violations stemming from expenditures made in two elections."

that renders any statutory language nugatory or sur-
plusage, and we " 'construe an act as a whole to
harmonize its provisions and carry out the purpose of
the Legislature.' " *Id.*, quoting *Macomb Co Prosecutor v
Murphy*, 464 Mich 149, 159-160; 627 NW2d 247 (2001).

We reject the notion that by enacting the MCFA, the
Legislature intended to divest county prosecutors of
their duty to investigate and prosecute election law
crimes. "The prosecutor is a constitutional officer
whose duties are as provided by law." *Genesee Prosecu-
tor v Genesee Circuit Judge*, 386 Mich 672, 683; 194
NW2d 693 (1972). The Legislature generally described
the prosecutor's legal duties in MCL 49.153, which
provides, "The prosecuting attorneys shall, in their
respective counties, appear for the state or county, and
prosecute or defend in all the courts of the county, all
prosecutions, suits, applications and motions whether
civil or criminal, in which the state or county may be a
party or interested." In a case construing the MCFA,
this Court recognized that "prosecuting attorneys in
Michigan possess broad discretion to investigate crimi-
nal wrongdoing, determine which applicable charges a
defendant should face, and initiate and conduct crimi-
nal proceedings." *Fieger*, 274 Mich App at 466. Our
careful consideration of the plain and unambiguous
language of the MCFA refutes the proposition that the
Legislature intended to delegate to the Secretary of
State's sole discretion whether alleged MCFA violators
should face criminal prosecution.

Indisputably, the Secretary of State possesses broad
authority to remedy election law infractions. But the
authority of the Secretary of State clearly does not
encompass the prosecution of election-law-related
crimes. In the Michigan Election Law, MCL 168.1 *et
seq.*, the Legislature invested the Secretary of

State with the obligation to *investigate* and *report* election law violations as follows:

> The secretary of state shall do all of the following:
>
> * * *
>
> (h) Investigate, or cause to be investigated by local authorities, the administration of election laws, and report violations of the election laws and regulations to the attorney general or prosecuting attorney, or both, for prosecution. [MCL 168.31(1)(h).]

The MCFA entrusts the Secretary of State with the responsibility of enforcing campaign finance laws by authorizing the Secretary of State to "correct" and "prevent" violations. MCL 169.215(10). But nothing in the MCFA supplies the Secretary of State with the power to prosecute *criminal* infractions. Rather, the MCFA expressly provides only that the Secretary of State may "commence a hearing to determine whether a *civil* violation of this act has occurred," and may impose a "*civil* fine . . . ." MCL 169.215(11) (emphasis added). "Civil infractions are not crimes and are not punishable by imprisonment or by 'penal fines'." *Saginaw Pub Libraries Bd of Comm'rs v Judges of the 70th Dist Court*, 118 Mich App 379, 387; 325 NW2d 777 (1982). And the MCFA specifically contemplates the potential imposition of criminal liability for violators irrespective of whether the Secretary of State has imposed a civil fine: "Unless otherwise specified in this act, a person who violates a provision of this act is subject to a civil fine of not more than $1,000.00 for each violation. *A civil fine is in addition to, but not limited by, a criminal penalty prescribed by this act.*" MCL 169.215(14) (emphasis added).

The Secretary of State's broad powers to investigate, conciliate, and remediate election law infringement,

and to assess civil fines, simply does not establish in the Secretary of State exclusive jurisdiction with respect to the criminal provisions of the MCFA. We discern no language in MCL 169.215, or elsewhere in the MCFA, that plainly conveys to the Secretary of State a prosecutorial function, or any language that attenuates the traditional criminal enforcement powers of prosecutors. Nor do we detect any legislative intent that informal methods of resolving campaign finance disputes, including conciliation agreements and civil fines, should entirely substitute for the prosecution of persons who "knowingly" violate MCL 169.254.[2]

Meijer and Dickinson urge that because MCL 169.215 describes an enforcement mechanism that includes no mention of the county prosecutor, this omission signifies that the Secretary of State possesses "the exclusive jurisdiction to enforce the MCFA unless, within her discretion, she refers a matter to the Attorney General and, even then, only after the mandatory conciliation procedure is exhausted and proven unsuccessful." In respondents' estimation, the MCFA neither explicitly nor implicitly grants to any other person or entity "the authority to contemporaneously investigate potential violations or to enforce the MCFA." We readily acknowledge that the enforcement provisions of § 15 omit express reference to the prosecutor. But MCFA § 15 and § 54(4), which criminalizes some corporate campaign contributions, relate to precisely the same subject: avoiding corruption or the appearance of cor-

---

[2] The Attorney General has previously reached the same conclusion: "The Legislature has provided that county prosecuting attorneys shall, in their respective counties, prosecute all civil and criminal matters in which the state or county may be interested. MCL 49.153 . . . . Nothing contained in the MCFA diminishes the authority of county prosecutors to prosecute crimes committed in their respective counties." OAG, 1999-2000, No. 7040, pp 81, 82 (December 9, 1999).

ruption in election campaigns. Consequently, we inter-
pret these provisions *in pari materia* and read them
together as a whole. *People v Harper*, 479 Mich 599, 621;
739 NW2d 523 (2007). "The object of the *in pari
materia* rule is to give effect to the legislative intent
expressed in harmonious statutes." *Walters v Leech*,
279 Mich App 707, 710; 761 NW2d 143 (2008). "If two
statutes lend themselves to a construction that avoids
conflict, that construction should control." *In re Project
Cost & Special Assessment Roll for Chappel Dam*, 282
Mich App 142, 148; 762 NW2d 192 (2009).

We conclude that MCFA §§ 15 and 54 evince plain
legislative intent to create two distinct methods of
enforcing the MCFA: civil procedures pursued by the
Secretary of State and criminal prosecutions initiated
by county prosecutors or the Attorney General. By
enacting § 54, the Legislature unambiguously intended
that knowing violators of the corporate campaign fi-
nance law would face criminal prosecution. Without
question, the Legislature recognized and understood
that the prerogative of criminal prosecution resides
only in the Attorney General and county prosecutors.
We discern no language in § 15 suggesting that the
Legislature intended to appoint the Secretary of State
as the gatekeeper for all potential prosecutions under
the MCFA, concomitantly divesting the state's tradi-
tional prosecutorial entities of their statutory and con-
stitutional powers. Our construction of the statute fully
comports with this Court's previous observation in
*Forster v Delton School Dist*, 176 Mich App 582, 585;
440 NW2d 421 (1989), that under the MCFA, prosecu-
tors maintain their statutory power to prosecute crime:

> The campaign financing act does not allow for enforce-
> ment by private individuals. MCL 169.215 ... provides an
> express remedy to enforce the duties imposed under the
> campaign financing act. The campaign financing act also

provides for criminal penalties for knowing violation of the act, and enforcement for such knowing violation may be prosecuted by the Attorney General or local prosecuting attorneys.

Moreover, the interpretation of the MCFA suggested by Meijer and Dickinson would require us to read into the MCFA a jurisdictional rule that finds no support in the plain language of the act. "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). The MCFA makes no reference to jurisdiction, and nothing in the act conveys any intent, much less a "clear intention," to vest in the Secretary of State exclusive jurisdiction to determine whether MCFA violators will face criminal prosecution. See *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 669; 593 NW2d 534 (1999) (explaining that the Legislature "need only use terms that convey its clear intention that the grant of jurisdiction given is, in fact, exclusive").

The civil enforcement scheme set forth in the MCFA simply does not call into question the legitimacy of a criminal prosecution under the act. Although the Secretary of State possesses the *discretion* to refer violators to the Attorney General for prosecution, nothing in the act reflects that the Legislature intended that this discretionary referral ability would supplant a county prosecutor's traditional criminal law enforcement powers. The MCFA contains no language implying that the referral process constitutes the sole path to criminal prosecution. And we cannot agree with Meijer and Dickinson that § 15 subjects the prosecutorial power to investigate crime and

initiate prosecution to the sole discretion of the Secretary of State.

Meijer and Dickinson further assert that "statutes vesting administrative agencies with exclusive jurisdiction for enforcement" preclude circuit court proceedings "for alleged violations of the very statutory scheme for which the agency is charged with enforcement." In support of this claim, Meijer and Dickinson invoke several decisions of this Court.[3] In all the cited cases, this Court held that an administrative agency possessed exclusive jurisdiction over the issues presented.[4] However, none of the cases invoked by Meijer and Dickinson involved a criminal prosecution. We reject the proposition that by creating administrative agencies or designating state officers as responsible for the enforcement of regulatory laws, the Legislature intended to take away from county prosecutors their statutory power to prosecute crimes committed in their respective counties. Alternatively stated, by enacting MCL 169.215 or other regulatory schemes, the Legislature did not intend to delegate to civil authorities the exclusive jurisdiction to enforce criminal provisions

---

[3] The cases cited by Meijer and Dickinson consist of *L & L Wine & Liquor Corp v Liquor Control Comm*, 274 Mich App 354; 733 NW2d 107 (2007) (involving the power of the Liquor Control Commission under the Michigan Liquor Control Code, MCL 436.1101 *et seq.*); *Huron Valley Schools v Secretary of State*, 266 Mich App 638; 702 NW2d 862 (2005) (in which the plaintiffs averred that the defendant had misinterpreted or violated the MCFA); *Papas v Gaming Control Bd*, 257 Mich App 647; 669 NW2d 326 (2003) (concerning casino licensing under the Michigan Gaming Control and Revenue Act, MCL 432.201 *et seq.*); and *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43; 620 NW2d 546 (2000) (where the plaintiff sought a declaratory judgment on the basis that the Attorney General and the Secretary of State had misconstrued or would misconstrue the MCFA).

[4] *L & L Wine & Liquor*, 274 Mich App at 357-358; *Huron Valley Schools*, 266 Mich App at 645-650; *Papas*, 257 Mich App at 649; and *Citizens for Common Sense in Gov't*, 243 Mich App at 47.

concomitantly enacted to punish regulatory transgressors.[5]

Meijer and Dickinson also aver that a conciliation agreement bars both further civil proceedings and criminal enforcement of the MCFA, even if initiated by the Attorney General. In support of this argument, Meijer and Dickinson cite the portion of MCL 169.215(10) stating, "Unless violated, a conciliation agreement is a complete bar to any further action with respect to matters covered in the conciliation agreement." Because the Secretary of State possesses no legal authority to address criminal liability in a conciliation agreement, this statutory language does not bar the prosecutor from investigating felony charges. Furthermore, our review of the conciliation agreement reflects that it covered only Meijer's civil liability for violating the MCFA and the assessment of civil fines; the agreement includes no mention that the Secretary of State considered or imposed criminal penalties.

By its plain terms, the MCFA creates a framework for remedying and punishing campaign finance law violations. The statutory language neither expressly creates nor inherently implies any restriction applicable to the prosecutor's power to investigate criminal violations provided for by the MCFA. Had the Legislature intended that civil enforcement by the Secretary of State

---

[5] Pursuant to the Liquor Control Code, "[a] person who engages in the business of selling or keeping for sale alcoholic liquor in violation of this act" is liable "both civilly and criminally" for the act's violation. MCL 436.1917(1). Under the Michigan Gaming Control and Revenue Act, a person who conducts a gambling operation "where wagering is used or to be used without a license issued by the board" is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $100,000, or both, and shall be barred from receiving or maintaining a license . . . ." MCL 432.218(1)(a).

would preclude all related criminal prosecutions, it would not have incorporated in the MCFA an admonition that "[a] civil fine is in addition to, but not limited by, a criminal penalty prescribed by this act." MCL 169.215(14). Absent a clear and unambiguous expression that the Legislature intended to limit a prosecutor's authority, we divine in MCL 169.215 no intent to divest the circuit court of jurisdiction to entertain the criminal prosecution of campaign finance law violators.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.