**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Marilyn Kelly          Michael F. Cavanagh
                       Elizabeth A. Weaver
                       Maura D. Corrigan
                       Robert P. Young, Jr.
                       Stephen J. Markman
                       Diane M. Hathaway

FILED JULY 23, 2010

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                   No. 138668

BRIAN LEE HILL,

        Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case presents the question whether a defendant who downloads child sexually abusive material from the Internet and "burns" that material to a CD-R[1] may be convicted of violating MCL 750.145c(2), which provides that any person who "arranges for, produces, makes, or finances . . . any . . . child sexually abusive material," is guilty of a

---

[1] CD stands for "compact disc." A CD-R (compact disk-recordable) is a blank compact disc that an individual can purchase and onto which pictures, movie or video files, and various other digital images, information, and data can be "burned," or saved permanently, through the use of a computer. One definition of the term "burn" is "to record data on (a compact disc)." *Random House Webster's College Dictionary* (2001).

felony punishable by imprisonment for not more than 20 years or whether the defendant may only be convicted of violating MCL 750.145c(4), which makes the knowing possession of child sexually abusive material a felony punishable by imprisonment for not more than 4 years.

The Court of Appeals held that a defendant, even if his intent in burning the prohibited images to a CD-R was to retain those images for personal use, may be convicted of the 20-year felony under MCL 750.145c(2). We respectfully disagree. MCL 750.145c has a graduated scheme of offenses and punishments. It punishes (1) those who are responsible for the *origination* of child sexually abusive material (a 20-year felony), (2) those who are responsible for the distribution and promotion of the prohibited material (a 7-year felony), and (3) those who are responsible for the knowing possession of the prohibited material (a 4-year felony). From these three tiers of offenses and punishments, we conclude that the Legislature did not intend the imposition of the same maximum punishment on a person who downloads a prohibited image from the Internet and burns it to a CD-R for personal use as on the person who is responsible in the first instance for the creation and existence of the pornographic images of minors. The person who is responsible for bringing the prohibited images into existence is obviously more morally, and under the statute, more criminally, culpable than the person who downloads an image and saves it to another medium for personal use.

We hold that when the terms "produces" and "makes" in MCL 750.145c(2) are construed in accordance with their immediately surrounding text and with a view toward the statute's overall organization, including a graduated scheme of offenses and

2

punishments, a defendant may not be convicted of the 20-year felony when there is not proof beyond a reasonable doubt that he had a criminal intent to do something other than possess the CD-Rs for his own personal use. Just as a person who downloads a song from the Internet and burns it to a CD-R is not considered to have produced or made a song, so a person who burns a prohibited image to a CD-R for his personal use has not produced or made the image.

It is clear that the Legislature intended only that defendant could be convicted of the 4-year felony of knowingly possessing child sexually abusive material under MCL 750.145c(4). Those who copy or duplicate *existing* prohibited images for personal use do not produce or make child sexually abusive material under MCL 750.145c(2); rather, they are only in possession of it. MCL 750.145c(2) is primarily applicable to those who *originate* child sexually abusive material. Therefore, we reverse in part the judgment of the Court of Appeals, vacate defendant's convictions under MCL 750.145c(2), and remand for further proceedings not inconsistent with this opinion.[2]

## I. FACTS AND HISTORY

As relevant here, defendant was charged with five counts of "arrang[ing] for, produc[ing], mak[ing], or financ[ing]" child sexually abusive material, in violation of MCL 750.145c(2), after a search of his two laptop computers and approximately 50

---

[2] Defendant was also convicted of five counts of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(f), and three counts of installing a device for observing, photographing, or eavesdropping in a private place, MCL 750.539d. These convictions are not before us.

3

CD-Rs found in his bedroom. After being bound over for trial, defendant moved to quash the information with regard to these charges, arguing that the burning or saving of images or data to a CD-R does not rise to the level of producing or making child sexually abusive material. He further argued that the transfer of images from the Internet to his computer's hard drive and then to the CD-Rs constituted nothing more than the storage of data. Thus, he contended that he should only be charged with "knowingly possess[ing]" child sexually abusive material under MCL 750.145c(4) because he had not originated the prohibited images.

The trial court denied this motion, stating:

[T]he only question, one of apparent first impression, is whether the act of downloading the image from the internet and "burning" (recording) the image to a CD constitutes the "making" or "production" of such materials.

The dictionary . . . contains several definitions of the word "make." Among them are:

To cause to exist, occur, or appear; create; to fit, intend, or destine by, or as if by creating; to bring into being by forming, shaping, or altering material; to put together from components.

Applying this definition here, the "bottom line" is that, after the requisite, mechanical, and technical functions, some things exist (CD-Rs with these images on them) that did not exist prior to that act.

Defendant appealed by leave granted, and the Court of Appeals affirmed in a published opinion, stating:

The term "make" is defined as follows: "to bring into existence by shaping, changing, or combining material[.]" *Random House Webster's College Dictionary* (2001). Defendant acquired child sexually abusive material through the Internet, and he shaped, formed, and combined the material through placement of various selected pictures, videos, and images onto specific CD-Rs, bringing into existence something that had not

4

previously existed, i.e., distinctly created and compiled child-pornography CD-Rs. [*People v Hill*, 269 Mich App 505, 518; 715 NW2d 301 (2006).]

The Court of Appeals also stated:

> Regardless of whether defendant's actions are viewed as copying the original photographs and videos, or copying electronic or computer visual images of the downloaded photographs and videos, the fact remains that copies and reproductions were made. Defendant's argument that use of the CD-Rs was just a mechanism by which to store possessed child pornography ignores the reality that the storing of the images was accomplished through the copying or duplication of already existing images that continued to exist after the images were burned onto the CD-Rs. The language of the statute is clear and unambiguous. The decision by the Legislature to specifically include reproductions or copies in defining "child sexually abusive material," which term is then incorporated into [MCL 750.145c(2)], leaves no room for a contrary judicial construction. [*Id.* at 517.]

We denied defendant's application for leave to appeal, with three justices indicating that they would grant leave to appeal. 477 Mich 897 (2006). We also denied defendant's motion for reconsideration, with three justices indicating that they would grant reconsideration and, on reconsideration, would grant leave to appeal.[3] 477 Mich 1016 (2007). Defendant next unsuccessfully sought relief in federal court. *Hill v People*, 2007 US Dist LEXIS 47700 (WD Mich, July 2, 2007, Case No 1:07-CV-271), and then proceeded to a bench trial. As relevant to the convictions under review, the evidence demonstrated that defendant had downloaded and copied to CD-Rs five specific images

---

[3] See also *People v Hartman*, 480 Mich 1058 (2008), in which three justices indicated that they would grant leave to appeal to consider whether someone who downloaded child sexually abusive material from the Internet and saved it to a "flash drive" could properly be convicted of violating MCL 750.145c(2).

5

depicting child sexually abusive material.[4]  The trial court found defendant guilty of five counts of violating MCL 750.145c(2), stating:

> The proofs show a repeated pattern of taking an image off the computer and moving it or saving it somewhere else where it did not previously exist. . . .  Mr. Hill is guilty of . . . making, producing etc. child sexually abusive materials . . . [that] were created by affirmative action by the user.

Defendant appealed in the Court of Appeals, which affirmed his convictions and declined his request to reconsider its earlier published decision holding that the downloading and burning of child sexually abusive material to a CD-R constitutes making or producing child sexually abusive material.  *People v Hill*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2009 (Docket No. 281055).[5]  This Court then granted leave to appeal.  485 Mich 911 (2009).

## II.  STANDARD OF REVIEW

Whether conduct falls within the scope of a penal statute, in this case MCL 750.145c(2), is a question of statutory interpretation that we review de novo.  *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001).

---

[4] Although the convictions under review pertained only to 5 images, the evidence here showed that defendant possessed 50 CD-Rs containing approximately 100,000 images and that an estimated 70 percent of these constituted child sexually abusive material.

[5] The Court of Appeals did, however, identify errors in the scoring of defendant's offense variables under the sentencing guidelines and remanded for resentencing.

6

## III. RULES OF INTERPRETATION

MCL 750.145c is a relatively lengthy statute. Most relevant for present purposes are subsections (2) through (4), which provide:

(2) A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material[6] is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

(3) A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both, if that

---

[6] MCL 750.145c(1)(m) defines "child sexually abusive material" as follows:

"Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. This subsection does not apply to the persons described in section 7 of 1984 PA 343, MCL 752.367.

(4) A person who knowingly possesses any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

The issue here is how the terms "produces" and "makes" in subsection (2) should be interpreted.

The rules of statutory construction are well established. As this Court explained in *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420-422; 662 NW2d 710 (2003):

When construing a statute, the Court's primary obligation is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute. If the language of the statute is unambiguous, the Legislature is presumed to have intended the meaning expressed.

* * *

The doctrine of *noscitur a sociis*, i.e., that "a word or phrase is given meaning by its context or setting," affords us assistance in interpreting [statutes]. . . .

. . . "[Statutes] exist[] and must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute . . . ." "[W]ords in a statute should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole." Although a

8

phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. "In seeking meaning, words and clauses will not be divorced from those which precede and those which follow." "It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." [Citations omitted.]

We are also instructed to give undefined statutory terms their plain and ordinary meaning unless the undefined word or phrase is a term of art.[7]

The Legislature did not specifically define the terms "produces" or "makes." Therefore, it is appropriate to consider dictionary definitions to discern the meanings of these terms. *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998).

From all of this, it is clear that what a court should do in construing a term in a criminal statute for which there are a variety of potential definitions is to determine from among those definitions which the Legislature most reasonably intended by the specific context in which the term is found.

## IV.  APPLICATION

This Court first considered MCL 750.145c in *People v Tombs*, 472 Mich 446; 697 NW2d 494 (2005).  In *Tombs*, the defendant turned in a company laptop computer, and more than 500 images of child pornography were found on it in a file location not readily

---

[7] MCL 8.3a provides:

All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

9

or easily locatable. The defendant was convicted of violating MCL 750.145c(3), promoting or distributing child sexually abusive material. This Court first recognized the longstanding principle that a criminal statute is presumed to include a criminal intent or *mens rea* absent an express or implied indication that the Legislature wanted to dispense with it. *Id.* at 456-457 (opinion by KELLY, J.); *id.* at 466 (TAYLOR, C.J., concurring).[8] We then held that the criminal intent to possess child sexually abusive material was not the same as the criminal intent to promote or distribute child sexually abusive material. *Id.* at 448 (opinion by KELLY, J.). We affirmed the decision of the Court of Appeals that reversed the defendant's conviction for distributing or promoting child sexually abusive material, stating: "Although defendant intended to distribute the laptop containing child sexually abusive material to his former employer, no evidence suggests that he distributed the material with a criminal intent." *Id.* at 459-460.

The lead opinion in *Tombs* examined MCL 750.145c and proceeded to summarize the Court's position as follows: "The Legislature expressly separated the crimes of

---

[8] As explained in *People v Beaudin*, 417 Mich 570, 574; 339 NW2d 461 (1983): "Performance of the physical act proscribed in the statute is not enough to sustain a conviction. The act must be coincident with an intent to bring about the particular result the statute seeks to prohibit." It is also the case that common-law defenses are "read into" criminal statutes. See, e.g., *United States v Panter*, 688 F2d 268, 271 (CA 5, 1982), which explained that a legislature's

> failure to provide specifically for a common-law defense in drafting a criminal statute does not necessarily preclude a defendant charged with violating that statute from relying on such a defense. This conclusion is unassailable; statutes rarely enumerate the defenses to the crimes they describe.

production of child sexually abusive material, distribution or promotion of the material, and simple possession." *Id*. at 464. It further stated:

> Possession is not the same as promotion. The prosecutor blurs the two, asserting that by obtaining the material from the Internet, defendant promoted it. To accept that argument, this Court would have to ignore the express language of the Legislature that created a graduated scheme of offenses and punishments regarding child sexually abusive material. [*Id*.][9]

*Tombs* recognized that MCL 750.145c clearly establishes three tiers in its graduated scheme of both offenses and punishments. Those who are involved in the production of child sexually abusive material are subject to a maximum sentence of 20 years, those who distribute or promote such material are subject to a maximum sentence of 7 years, and those who knowingly possess such material are subject to a maximum sentence of 4 years.

There is an inherent logic to this scheme. The Legislature reasonably concluded that those who distribute or promote child sexually abusive material are more morally and criminally culpable than those who possess such material and that those who create or originate such material are the most morally and criminally culpable. The case at bar requires us to determine whether defendant's act of downloading and burning child

---

[9] Accord *People v Adkins*, 272 Mich App 37, 40; 724 NW2d 710 (2006) ("We conclude that the language of [MCL 750.145c(2)] clearly and unambiguously imposes criminal liability on three distinct groups of 'person[s],' provided that at the time of their actions, the persons met the requisite knowledge element."). See also *People v Ward*, 206 Mich App 38, 42-43; 520 NW2d 363 (1994), in which the Court of Appeals observed that MCL 750.145c(2) "focuses on protecting children from sexual exploitation, assaultive or otherwise" and that the purpose of the statute is "to combat the use of children in pornographic movies and photographs, and to prohibit the production and distribution of child pornography."

sexually abusive material to CD-Rs falls within the top tier or the bottom tier; it is not argued by either party that it falls within the middle tier, and we also do not believe that it does, for what defendant has done does not constitute the promotion or distribution of child sexually abusive material. That is, unlike *Tombs,* this case does not involve determining whether a defendant's conduct falls within adjacent tiers and whether it is punishable as a 4-year or 7-year felony. Rather, this case involves determining whether defendant's conduct falls within the *lowest* or the *highest* tier and thus whether defendant has committed a 4- or 20-year felony.

We keep the graduated scheme of MCL 750.145c and the magnitude of the potential disparity in defendant's criminal liability in mind as we attempt to discern the most reasonable definitions for "produces" and "makes" as used in MCL 750.145c(2). Again, the pertinent language of that subsection is "arranges for, produces, makes, or finances" any child sexually abusive material. On the basis of the previously stated principles, we must consider MCL 750.145c *as a whole* in determining the meaning of "produces" and "makes" in this statutory context. Pursuant to the maxim of *noscitur a sociis*, these words must be viewed in light of the surrounding terms employed in MCL 750.145c(2), i.e., "arranges for" and "finances," because the latter supply guidance regarding what the former mean in context.

"Makes" and "produces" are used in MCL 750.145c(2) as verbs that may communicate a variety of different concepts. The Court of Appeals adopted the first definition of "make" in the *Random House Webster's College Dictionary* (2001)-- "to bring into existence by shaping, changing, or combining material[.]" *Hill*, 269 Mich App

12

at 518.  But this is only one of many definitions for "make" in that dictionary.  The second and third definitions are as follows: "2. to cause to exist or happen . . . . 3. to cause to become . . . ."  The same dictionary also provides the following relevant definitions of "produce": "1. to cause to exist; give rise to . . . . 2. to bring into existence . . . . 7. to bring (a play, movie, opera, etc.) before the public."  We also consider the surrounding words, "arranges for" and "finances."  The dictionary offers the following relevant definitions of "arrange" as in "arranges for": "3. to prepare or plan . . . .  5. to make plans or preparations . . . ."  For "finances," it offers the following relevant definition: "3. to supply with money or capital . . . ."

The definitions of "arranges for," "finances," and "produce" afford obvious insight into how the adjoining term "make" should be interpreted.  When these four words are viewed together, their relatedness or common meaning becomes increasingly apparent--each constitutes a verb selected by the Legislature to communicate that persons included within this subsection are those who are somehow responsible for the creation or origination of child sexually abusive material.  Those who arrange for child sexually abusive material are involved at the front end of the process by identifying and coordinating the participants, equipment, and locations.  That is, the arranger has undertaken actions that lead to the actual production of the child sexually abusive material.  Those who finance child sexually abusive material provide funding that leads to the same result.  The terms "arranges for" and "finances" suggest that the most reasonable understanding of "produce" is "to bring (a play, movie, opera, etc.) before the public."  In other words, one should envision a producer as a person similar to the

13

producer of a play, movie, or opera who is directly responsible for the creation or origination of a particular production, in this case child sexually abusive material. "Produce" refers to the conduct of those persons but for whom the production (the material) would not exist in the first place, i.e., those who have transformed an idea into a reality. Without those who have arranged for, financed, or produced, there would be no child sexually abusive material at all.

This leaves the term "makes." Given the related definitions and understandings of "arranges," "produces," and "finances," we believe that "makes" should be interpreted in a similar manner as meaning "to cause to exist or happen" or "to cause to become."[10] That is, "makes" should be interpreted in the common fashion as referring to someone who is primarily involved in the creation or origination of the child sexually abusive material.[11]

---

[10] While we agree with the first part of the definition adopted by the Court of Appeals, "to bring into existence," we reject the second half of that definition, "by shaping, changing, or combining material," *Hill,* 269 Mich App at 518, because it adds a limiting dimension to "makes" that is inconsistent with the meanings of the surrounding terms, "arranges for," "produces," or "finances."

[11] This understanding of "produces" and "makes" is consistent with the opening clause of MCL 750.145c(2), which describes other individuals subject to punishment under that subsection: "[a] person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material[.]" The terms used in the opening clause clearly refer to those who have had *direct* contact with a minor, either through the minor's recruitment or through the minor's "performance" in the prohibited material. While those identified in the opening clause definitely are persons who directly deal with the children, those identified in the second clause, the arrangers, producers, makers, and financers, *may* also on frequent occasion have direct contact with the children.

When the terms "produces" and "makes" are understood in this light, it is simply untenable to conclude that downloading an existing image from the Internet and burning it to a CD-R for personal use constitutes producing or making child sexually abusive material under MCL 750.145c(2). While such conduct certainly constitutes proof of knowing possession of such material, it does not constitute sufficient proof of the making or producing of that material. Thus, when we consider the statute as a whole, especially the maxim of *noscitur a sociis* in conjunction with the graduated scheme of offenses and punishment, we conclude that MCL 750.145c(2) is primarily concerned with punishing those who are involved in the creation or origination of child sexually abusive material and not those who download and maintain that material for personal use.[12]

The Court of Appeals held that defendant had made child sexually abusive material, in violation of MCL 750.145c(2), because he brought into existence something that had not previously existed. We respectfully disagree with this analysis. While the

---

[12] Indeed, we note that before the instant Court of Appeals opinion, all published Michigan caselaw only applied the portion of MCL 750.145c(2) concerning a person who "produces" or "makes" child sexually abusive material to those involved in the creation or origination of prohibited images. See, e.g., *People v Heim*, 206 Mich App 439; 522 NW2d 675 (1994) (defendant who photographed his 16-year-old niece), *People v Hack*, 219 Mich App 299; 556 NW2d 187 (1996) (defendant who coerced two children to engage in sexual acts that he videotaped), *People v Riggs*, 237 Mich App 584; 604 NW2d 68 (1999) (defendant who photographed and videotaped four young girls), *People v Harmon*, 248 Mich App 522, 526-528; 640 NW2d 314 (2001) (defendant who photographed two minors engaged in sexual acts), and *People v Wilkens*, 267 Mich App 728; 705 NW2d 728 (2005) (defendant who recorded himself and two minors engaging in sexual acts). Thus, those who originate or create child pornography are guilty of violating MCL 750.145c(2), even if they only intend to keep the material for personal use.

15

burned *CD-Rs* may not have previously existed, this does not mean, in our judgment, that defendant made child sexually abusive material within the scope of MCL 750.145c(2). The fact that defendant placed prohibited images from different websites onto CD-Rs does not by itself rise to the level of making child sexually abusive material within the scheme enacted by the Legislature.[13] Rather, such a reading of the statute can only be reached if one fails to give full consideration to the statute's graduated scheme of offenses and punishments and if the term "makes" is read in isolation and without considering the immediately surrounding words. When "makes" is given a meaning reasonably compatible with those companion terms, its most reasonable interpretation pertains to the creation or origination of the child sexually abusive material in the first instance.

---

[13] In *Tombs*, we held that the criminal intent to knowingly possess child sexually abusive material was not the same as the criminal intent to promote or distribute child sexually abusive material. *Tombs*, 472 Mich at 448 (opinion by KELLY, J.). Similarly, we hold here that the criminal intent to knowingly possess child sexually abusive material, when the possession is accomplished by burning a CD-R for the purpose of possessing the prohibited images and not for future distribution or promotion, does not establish the criminal intent to produce or make child sexually abusive material. In *Tombs*, we also held that one who handed a computer containing child pornography to someone else did not distribute child pornography, even though the act of handing a computer to another person would satisfy a dictionary definition of "distribute." The Court held that the act of intentionally handing a computer over to another was insufficient by itself to constitute distributing child pornography. Rather, there had to be some criminal intent to distribute, and the defendant in *Tombs* did not possess that intent. Similarly, defendant here burned CD-Rs, and these acts by themselves did not constitute making or producing child pornography because there was no proof beyond a reasonable doubt that this was defendant's intent when he burned the CD-Rs for his personal use.

16

We believe our conclusion is reinforced by consideration of the manner in which most persons ordinarily think about other types of Internet downloading. It is common today for computer users to legally, and sometimes illegally, download songs, movies, television shows, music videos, and books from the Internet. When such materials are subsequently burned to a CD-R or recordable DVD or some other storage device, as they often are, few would be inclined to characterize that conduct as the making or producing of that song, movie, television show, music video, or book. Such a characterization would, to say the least, be strained and incompatible with the "common and approved usage of the language . . . ." MCL 8.3a.[14]

The Court of Appeals and the dissents focus on the fact that MCL 750.145c(1)(m) defines "child sexually abusive material" as "any depiction," including any "reproduction [or] copy," of a "computer-generated image, or picture . . . ." Thus, they read the prohibition against making or producing child sexually abusive material in conjunction with the fact that a reproduction or copy of a computer-generated image falls within the ambit of prohibited images in concluding that burning a prohibited image to a CD-R

---

[14] We further believe the Court of Appeals' analysis produces highly anomalous results. Consider two persons, one of whom downloads and burns child sexually abusive material to a CD-R for his personal possession and one of whom takes that CD-R and attempts to sell it. Under the dissents and the Court of Appeals' decision, the downloader has committed a 20-year felony while the seller has committed only a 7-year felony. We do not believe that this is consistent with the Legislature's intentions because the three tiers of MCL 750.145c instead suggest that the distributor is more criminally culpable than the downloader who, in order to obtain possession, has burned the prohibited images to a CD-R. When the Legislature has deemed the maker more culpable than the distributor, we disagree with the dissents' broad interpretation of "make," which we believe casts a far broader net than intended by the Legislature.

constitutes making prohibited material. Again, we respectfully disagree. If an image constitutes child sexually abusive material, this is true without regard to whether a defendant is someone who arranges for, produces, makes, or finances, or who distributes or promotes, or who only knowingly possesses. In other words, once it is determined that an image constitutes child sexually abusive material, it must then be determined into which of the statute's three tiers the defendant's conduct falls.

The fact that the definition of "child sexually abusive material" in MCL 750.145c(1)(m) includes copies of computer-generated images does not provide particular insight into what either "makes" or "produces" means in MCL 750.145c(2). Rather, the fact that child sexually abusive material includes not just originals but also copies simply communicates that a person may be charged with knowingly possessing a copy of a computer-generated image, or with promoting or distributing a copy of a computer-generated image, or with arranging for, producing, making, or financing a copy of a computer-generated image, in a manner indistinguishable from the person engaged in those same activities in connection with an original image.

Defendant here was convicted of five counts of producing or making child sexually abusive material on the basis of 5 specific images. A review of his 2 laptop computers and 50 CD-Rs revealed 5 copies of one of the images and fewer, or no, duplicates of the other images that sustained his convictions. The fact that 5 copies of a single prohibited image were found after searching 52 different locations containing approximately 70,000 images is insufficient, in our judgment, in the absence of other evidence to establish beyond a reasonable doubt a criminal intent on defendant's part to

18

produce or make this material.[15]  Since a common definition of "child sexually abusive

material" applies to all three tiers of MCL 750.145c, we conclude that the Legislature did

not intend that burning, or copying, images to a CD-R would have any special

significance when determining which particular tier had been violated by that burning or

copying.

We are persuaded that the Legislature did not intend to impose the same maximum

penalty on a person who downloads a prohibited image from the Internet and burns it to a

CD-R for personal use as on the person who is responsible for the creation of the

pornographic images of children.  The latter is obviously more morally and criminally

culpable than the person who downloads an image and saves it to another medium for

personal use; at least, this is what the Legislature, in our judgment, has communicated by

its enactment of MCL 750.145c.  Those who arrange for, produce, make, or finance child

sexually abusive material are punished more severely because they are the reason the

images exist in the first place.

While the Court of Appeals' definition of "makes" has some dictionary support,

its analysis was incomplete because it did not consider the statute as a whole and because

it did not consider that "makes" should be given a meaning compatible with its

---

[15] Cf. *People v Peterson*, 63 Mich App 538, 548; 234 NW2d 692 (1975):

> [T]he quantity of [marijuana] seeds possessed was so slight that we are constrained to find that reasonable jurors could not infer the intent to deliver from that quantity.  There was no other evidence on the question of defendant's intent.  It was therefore error for the trial judge to deny defendant's motion for a directed verdict of acquittal on the charged offense.

surrounding words.  When properly construed, the terms "produces" and "makes" are best understood as addressing those who are involved in the creation or origination of child pornography, and not those who download and burn a CD-R of prohibited images for personal use.

## V.  RESPONSE TO THE DISSENTS

The dissents obscure the issue before the Court by emphasizing the large quantity of prohibited images found in defendant's possession.  There is no doubt that defendant possessed a very considerable amount of child sexually abusive material.  However, the question before this Court is not whether defendant was a committed user of child sexually abusive material-- he was-- or whether he criminally violated MCL 750.145c-- he did-- but whether burning even a single prohibited image to a CD-R constitutes producing or making child sexually abusive material in violation of MCL 750.145c(2).[16]

The dissents fail to adequately consider the statute's overall organization and graduated scheme of offenses and punishments.  As a consequence, the dissents end up blurring, and eventually ignoring altogether, the very distinct criminal definitions and requisite states of mind necessary to obtain a conviction under MCL 750.145c when they interpret "makes" as encompassing the conduct of a person who burns a prohibited image to a CD-R for the purpose of storing, or making permanent, his possession of that image.

---

[16] Even Justice YOUNG recognizes this in asserting in his dissent that "[m]aking even a *single* copy of child pornography violates the statute."  Whether there is a large number of prohibited images in defendant's possession may well be a factor for the trial court to consider at sentencing; however, this does not transform a violation of subsection (4) of MCL 750.145c into a violation of subsection (2) of that statute.

20

Contrary to Justice YOUNG's assertion that the majority "would prefer that the statute cease" after its most severe violation has been defined, it is the dissenting justices who inappropriately read this language in isolation, ignoring the overall structure and organization of the statute, ignoring the distinct offenses that the statute defines, and ignoring the gradations of punishment that the statute establishes. It is the dissents that distort what is manifest in the statute-- that distinctions are to be made among criminal violators, distinctions predicated on whether the violator has created or originated the material, distributed the material, or merely possessed the material.

The dissents would compress nearly every criminal violator into the category of "creator" or "originator" on the basis of their having made a *copy* of material created or originated by others. Thus, to the dissenters, there is no distinction, as we believe is manifest in the statute, between a person who downloads and burns child sexually abusive material to a storage device and the person who procures the seven-year-old girl, pays her parents, and then produces a film or image in which she is depicted in sexual poses.[17] However, these are distinctions that the Legislature has made, and they are reasonable distinctions. The dissents notwithstanding, we do not "relieve[] . . . of criminal responsibility" the computer downloader when we recognize that the Legislature drew *distinctions* in MCL 750.145c between types of misconduct. No criminal responsibilities are being "relieved" when legislative distinctions are respected and the

_____

[17] The question of what offense a mass producer of copies of a single prohibited image would be guilty is not before us, and we do not address it in this case.

21

computer downloader of prohibited material is made subject to a 4-year term of imprisonment and the distributor of the same material is made subject to a 7-year term of imprisonment instead of the 20-year term of imprisonment reserved for the producer of the material, but for whose actions the material would never have existed in the first place. The Legislature is entitled to draw distinctions in its definitions of criminal activity, and this Court is obligated as a general matter to abide by those distinctions.

Given that various things can be downloaded from the Internet and burned to other media, the dissents' strained interpretation of the term "makes" would have consequences far beyond the instant case. A person can download-- legally or illegally-- songs, books, music videos, television shows, or movies from the Internet and burn them to another medium such as a CD-R or recordable DVD. Yet virtually no one beyond the dissenting justices would consider such a person to have "made" or "produced" those songs, books, music videos, television shows, or movies. The legal or illegal downloader of *Star Wars* is not the equivalent of Stephen Spielberg, the legal or illegal downloader of *The Da Vinci Code* is not the equivalent of Dan Brown, and the legal or illegal downloader of the *Sgt. Pepper's Lonely Hearts Club Band* album is not the equivalent of John Lennon or Paul McCartney. Even if these downloaders preserve the materials on a CD or DVD, they have not "made" those movies, "made" those books, or "made" that music in the same way as the creators of the materials.[18] Similarly, we are satisfied that a person who

_____

[18] That the illegal downloading and burning of a song, movie, or book may constitute a violation of federal copyright law, as Justice YOUNG asserts, *post* at 9 n 8, bears little relevance to whether a person who downloads and burns for personal use a

22

burns a prohibited image to a CD-R or recordable DVD for his personal use is not the equivalent of the person who procured the child, placed the cameras in front of her, and created or originated child sexually abusive material. While both are criminally liable, they are liable under different sections of the statute.

Indeed, under the dissents' interpretations, one might argue that someone who only *viewed* a prohibited image on a computer screen is guilty of making child pornography, given that computers themselves automatically store viewed images in temporary files. In other words, if Justice YOUNG genuinely believes that burning even a single prohibited image to a CD-R always constitutes making child pornography because it increases "the net amount of child pornographic images in existence," it would seem that consistency would require that a defendant who is merely *aware* of such temporary files would also be guilty of making child sexually abusive material whenever he views those images.

Finally, the dissents also assert that the majority has created "out of whole cloth" an "additional hurdle" by requiring proof of a defendant's intent. This is plainly incorrect. There is nothing at all remarkable in a court's reading a criminal intent into a criminal statute, given that such statutes are generally presumed to include a criminal intent. See *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952); *Staples v United States*, 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994); *Tombs*,

---

song, movie, or book and thereby infringes on the copyright is making or producing the song, movie, or book under MCL 750.145c(2).

23

472 Mich at 452-456 (opinion by KELLY, J.); *id.* at 465-468 (TAYLOR, C.J., concurring). Absent any state-of-mind requirement, a wife who transported her husband's laptop to the police station because she suspected that it contained child sexually abusive material would herself arguably be a possessor and distributor of the material. See *Tombs*, 472 at 458-459 (opinion by KELLY, J.). Similarly in this case, absent any state-of-mind requirement, a wife who downloaded a child sexually abusive image from her husband's computer and brought it to the police would herself run the risk of being characterized as a maker of the material under the dissents' interpretations of MCL 750.145c. Contrary to the dissents, it does not create an "additional hurdle" to prosecutions, or create a new statute "out of whole cloth," to require proof of a criminal intent in a criminal statute.

## VI. CONCLUSION

A defendant who downloads child sexually abusive material from the Internet and burns the images to a CD-R, when there is no evidence the defendant had a criminal intent to do something other than possess the CD-R for his own personal use, may not be convicted of violating MCL 750.145c(2), which makes it a 20-year felony for any person who "arranges for, produces, makes, or finances" "any child sexually abusive material . . . ." Rather, that person is properly convicted of knowing possession of child sexually abusive material in violation of MCL 750.145c(4), a 4-year felony. The three tiers of offenses and punishments in MCL 750.145c compellingly indicate the Legislature did not intend to impose the same maximum penalty on a person who downloads a prohibited image from the Internet and burns it to a CD-R for personal use as on a person who is involved in the creation or origination of child sexually abusive material.

24

Therefore, we reverse in part the judgment of the Court of Appeals, vacate defendant's convictions under MCL 750.145c(2), and remand for further proceedings not inconsistent with this opinion.

KELLY, C.J., and CAVANAGH and HATHAWAY, JJ., concurred with MARKMAN, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                            No.  138668

BRIAN LEE HILL,

        Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I dissent from the majority opinion, which reverses in part the judgment of the Court of Appeals and vacates defendant's convictions under MCL 750.145c(2). I would affirm defendant's convictions under MCL 750.145c(2) because defendant intentionally made copies of child sexually abusive material.

In this case, police officers obtained two laptop computers and numerous recordable compact discs from defendant's home containing approximately 70,000 to 80,000 pornographic images of boys ranging in age from "toddlers to teens." Within defendant's immense collection of pornographic images, authorities found multiple copies of a single pornographic image. The copies created the basis for charging defendant with making child sexually abusive material.

I agree with Justice YOUNG's statement in his dissent: "[T]he majority opinion relieves a defendant of criminal responsibility for making copies of child pornography

'for personal use' and creates out of whole cloth an additional hurdle for those prosecuting individuals who make child pornography . . . ."

Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                            No. 138668

BRIAN LEE HILL,

      Defendant-Appellant.

_____

YOUNG, J. (*dissenting*).

In this case, defendant *admitted* making 50 recordable compact discs (CD-Rs) containing approximately 70,000 to 80,000 pornographic pictures depicting boys from "toddlers to teens," as well as videos depicting 12- to 13-year-old boys engaged in sexual acts. Within this compendious library of child pornography, *multiple* copies of one *particular* pornographic image formed the basis of the charges that were lodged against defendant for making child sexually abusive material.[1]

---

[1] Five images, described as "Jeff0015.jpg," were created on defendant's laptop computer on October 5, 2002, and September 9, 2003, and found on three separate CD-Rs created April 15, 2003, April 26, 2003, and June 11, 2003. The record also indicates that the Jeff0015.jpg file was attached to a November 28, 2003, e-mail. However, a computer forensic examiner testified that she was unable to determine whether defendant sent the e-mail or received it.

The statute under which defendant was convicted plainly applies to *any* person who "makes" *copies* of child pornography.[2] Here, despite the uncontested proof that defendant made *numerous copies* of one particular pornographic image, the majority opinion reverses defendant's convictions because it contends that he *merely* intended to possess the copied images "for personal use" and because the majority opinion finds it "simply untenable" that the Legislature would punish "those who download and maintain that material for personal use" as harshly as those involved in the "creation or origination" of child pornography.

However, the straightforward language of the statute is not limited to the original creator of the child pornography. Rather, MCL 750.145c(2) explicitly criminalizes *making copies of child pornography,* without requiring the prosecution to prove what the defendant intended to do with the child pornography *once the crime had been committed*, that is, once the copies had been made. Because the majority opinion relieves a defendant of criminal responsibility for making copies of child pornography "for personal use" and creates out of whole cloth an additional hurdle for those prosecuting individuals who make child pornography, I vigorously dissent.

The relevant portions of MCL 750.145c provide:

> (2) A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, *or* a person who arranges for, *produces, makes*, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance *any child*

---

[2] MCL 750.145c(1)(m); MCL 750.145c(2).

2

*sexually abusive activity or child sexually abusive material is guilty of a felony,* punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both . . . .

(3) A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both . . . .

(4) A person who knowingly possesses any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both . . . .  [Emphasis added.]

Also critical to interpreting the prohibition against making child pornography is the statutory definition of two relevant terms.  "Child sexually abusive activity" is defined as "a child engaging in a listed sexual act,"[3] while "child sexually abusive material" is statutorily defined as

*any depiction*, whether made or produced by *electronic*, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, *electronic visual image*, computer diskette, *computer or computer-generated image*, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, *computer, computer storage device*, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or *any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image,* or picture, other visual or print or printable medium, or sound recording.[4]

---

[3] MCL 750.145c(1)(*l*).  When defendant created the images at issue, the definition was codified at MCL 750.145c(1)(k).

[4] MCL 750.145c(1)(m) (emphasis added).  When defendant created the images, this definition was codified at MCL 750.145c(1)(*l*).

3

I agree with the majority opinion that MCL 750.145c establishes a graduated scheme of offenses and punishments. Broken down into its simplest terms, the statute provides a 20-year maximum sentence for those who make child pornography, a 7-year maximum sentence for those who distribute child pornography, and a 4-year maximum sentence for those who knowingly possess child pornography.  It is the most severe sanction—the 20-year maximum sentence for those who make child pornography—that is at issue in this case.

MCL 750.145c(2) contains two distinct clauses, separated by the conjunction "or." The first clause covers a person who "persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material . . . ."  This clause penalizes those who cause a child to *engage in* a sexual act for the purpose of producing child pornography. These are the "creators" or "originators" of the child pornography, those whom the majority opinion acknowledges as having "*direct* contact with a minor."

While the majority would prefer that the statute cease at the creators or originators of the child pornography, it does not. The second clause of MCL 750.145c(2) imposes criminal sanctions on a person who "arranges for, produces, *makes*, or finances . . . any child sexually abusive activity or *child sexually abusive material* . . . ."[5]  (Emphasis added.)  The latter portion of the statutory provision pertains to more than the child

_____

[5] The statute also imposes criminal sanctions on one who "attempts or prepares or conspires to" arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material.  MCL 750.145c(2).

4

sexually abusive *activity*—significantly, it also relates to the child sexually abusive *material*. And that is a critical point in any effort to give full meaning to this statute.

As noted, "child sexually abusive material" is statutorily defined as *any depiction* of a child engaged in a sexual act. The statute uses broad language to cover a wide range of image formats, including images produced by electronic, mechanical, or other means, photographs, pictures, films, slides, videos, electronic visual images, books, and magazines. It also includes depictions on a computer diskette, a computer, or a computer storage device. Significantly, "child sexually abusive material" includes "*any reproduction, copy, or print* of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording."[6]

The definitive question in this case is quite simple: did defendant "produce [or] make" a "reproduction [or] copy" of an "electronic visual image," a "computer, or computer-generated image," or other "visual or print" medium when he took the deliberate action of copying "Jeff0015.jpg" to his computer hard drive? Unquestionably, the answer is *yes*. Defendant then took the additional, volitional steps of copying that image to his computer a *second* time, as well as copying it to several CD-Rs.

The majority opinion's conclusion that MCL 750.145c(2) is "primarily concerned" with punishing "the creation or origination" of child pornography and "not those who download" it "for personal use" has no basis in the language of the statute. Indeed, the

_____

[6] MCL 750.145c(1)(m).

5

majority opinion takes great pains to avoid noting or giving significance to the fact that by downloading *and successively copying* child pornography, defendant intentionally produced or made a "reproduction [or] copy" of the same illicit pornographic image *five distinct times*.

Forced to acknowledge that the plain language of the statute says what it says and that "a person may be charged with" "producing, *making*, or financing a *copy* of a computer-generated image" in a "manner indistinguishable from the person" who created the original image, the majority opinion nevertheless proceeds to write the second clause of MCL 750.145c(2) out of existence by concluding that a defendant's ultimate plans for the child pornography negate the criminal prohibition regarding the method of acquisition.[7] Presumably, a defendant copying child pornography would only ever do so for one of two purposes—either to possess it for himself or to distribute it to others. Both of these purposes are reflected in MCL 750.145c(3) and (4), which provide for a 7-year maximum sentence for those who *distribute* child pornography and a 4-year maximum sentence for those who *possess* child pornography. Under the majority opinion, despite the clear mandate imposing a 20-year sentence on those who make copies of child

---

[7] Our criminal code is replete with examples of crimes that have heightened consequences because of a defendant's *chosen method of committing the crime*. For example, one who commits an assault is generally subject to a 93-day jail term for that misdemeanor. MCL 750.81. However, if the same assault is committed with a dangerous weapon, the crime is a four-year felony. MCL 750.82. If the analysis used in the majority opinion were applied to a felonious assault case, one would be forced to conclude that the defendant merely intended to commit a 93-day misdemeanor, not a four-year felony, despite the uncontested evidence that a dangerous weapon was used during the assault.

6

pornography, a defendant who makes copies of child pornography will *never* face more than either 4 or 7 years' imprisonment.

By holding that a defendant who makes copies of child pornography is guilty of only a 4-year felony when the copies are made "for personal use," the majority opinion essentially holds that defendant's criminal liability is limited to that of a mere possessor under MCL 750.145c(4). However, under the plain language of the statute, defendant is more than a mere possessor of child pornography. The majority's holding is especially hard to square with the fact that defendant took the additional, *volitional* steps of copying the images to his computer and separately to CD-Rs. I believe that these actions fall squarely under MCL 750.145c(2) rather than MCL 750.145c(4). As the Court of Appeals opinion noted, it is certainly possible to *possess* child pornography without copying or reproducing the images. Indeed, defendant could have satisfied his yen for "personal use" of child pornography and "merely possessed" the images by viewing them on the Internet without actually *copying* the images to his computer twice and recopying the images to several entirely separate compact discs. However, once he copied an image, he clearly violated MCL 750.145c(2). While the majority opinion maintains that the originator of child pornography is "obviously more morally" and "more criminally" culpable than the copier of child pornography, nothing in the statutory scheme indicates that the Legislature shares the majority's culpability assessment. Indeed, the clear language of the statute indicates that the Legislature has deemed that both are *equally culpable*, and certainly *more culpable* than a defendant who possesses an illicit image without having taken the additional step of copying it.

7

The majority opinion also indicates that defendant's making "5 copies of a single prohibited image" is insufficient as a matter of law to sustain defendant's convictions. This is a conclusion that has absolutely no basis in the text of the statute. It is unclear to me why making five copies of an identical pornographic image of a minor is insufficient to sustain defendant's convictions because the *entirety* of MCL 750.145c(2) contains no numerical minimum requirement concerning copies of child pornography. Making even a *single* copy of child pornography violates the statute. The reason the majority opinion makes no effort to explain the calculus involved in determining that making five copies is insufficient is because it simply cannot justify such a conclusion.

The majority opinion runs far afield in responding to this dissent—and naturally so because the statutory language is clear and the majority is forced to strain in order to justify its conclusion. Central to the majority opinion's argument is its false conclusion that MCL 750.145c(2) is limited to the *originator* of child pornography. Thus, only those defendants having "*direct* contact with a minor" may be charged with violating MCL 750.145c(2). Not surprisingly, the majority opinion gives absolutely *no meaning* to the fact that the statute also encompasses those who *make copies* of child pornography, not merely those who "procured the child" and "placed the cameras in front of her."

While the hyperbole comparing child pornography to downloading materials from the Internet in violation of federal copyright laws certainly makes for entertaining reading, it is equivalent to comparing apples to orangutans. The federal copyright laws encompass those who willfully infringe a copyright, which includes making copies of the

8

creator's copyrighted material.[8] By including a "reproduction [or] copy" of pornographic child images in the definition of "child sexually abusive material," *the very material prohibited* under MCL 750.145c(2), the Legislature has unambiguously indicated that one need not be the Cecil B. DeMille of child pornography in order to run afoul of MCL 750.145c(2) for "mak[ing]" child sexually abusive material.

I find nothing vexing, much less "simply untenable," about our Legislature's decision to place an increased sanction on defendants who *make copies* of child pornography, thereby increasing the net amount of child pornographic images in existence. Because there is no question that defendant intentionally made multiple copies of child pornography, his convictions were proper and should be affirmed. Because the

---

[8] Title 17 of the United States Code establishes a creator's intellectual property rights in original works. 17 USC 102(a). The owner of the copyright has "the exclusive rights to do and to authorize . . . to reproduce the copyrighted work in copies," 17 USC 106(1), and "to distribute copies" of the copyrighted work, 17 USC 106(3). Federal law also establishes penalties for copyright infringement. It allows the copyright owner "to institute an action for any infringement," 17 USC 501(b), including injunctive relief (17 USC 502), impounding prohibited material (17 USC 503), and damages (17 USC 504).

Federal law also criminalizes an intentional copyright infringement committed "for purposes of commercial advantage or private financial gain[.]" 17 USC 506(a)(1)(A). There is a three-tiered system of punishment, as provided in 18 USC 2319(b): a 5-year maximum sentence for reproducing or distributing at least 10 copies of one or more copyrighted works whose total retail value is greater than $2,500, a 10-year maximum for repeat felony offenders, and a 1-year maximum for any other case. Thus, making unauthorized "copies" is *precisely* the nature of a copyright infringement claim.

majority opinion concludes otherwise, and because it creates additional hurdles to the prosecution of those who copy child pornography, I dissent.

CORRIGAN, J., concurred with YOUNG, J.

10