# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KRISTOPHER KYLE MCCHESTER,

Defendant-Appellant.

FOR PUBLICATION
May 5, 2015

No. 318145
Genesee Circuit Court
LC No. 12-030097-FC

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

GLEICHER, J. (*concurring*).

I concur with the majority's holding that insufficient record evidence supported defendant's 10-point score under Offense Variable 4. I write separately because the majority's analysis stops short of comprehensively addressing the threshold question: how should OV 4 be interpreted and applied?

I believe that to justify a 10-point score, a preponderance of record evidence must substantiate that the victim sustained a psychological injury beyond the initial emotional trauma precipitated by the crime which is both so serious and of such duration that the victim likely requires psychological treatment. A lesser showing does not comport with the unambiguous statutory requirements.

The Legislature adopted the offense variables to facilitate proportionate sentences, *People v Babcock*, 469 Mich 247, 263-264; 666 NW2d 231 (2003), and to promote sentencing uniformity. *People v Smith*, 482 Mich 292, 312, 754 NW2d 284 (2008). Accurate scoring of the variables depends on objective judicial findings grounded in a preponderance of record evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). Sentencing judges are not free to disregard the precise parameters of the guidelines as articulated by the Legislature. *Id.* at 110-111. Doing so risks disproportionate and widely divergent sentences.

OV 4 authorizes the sentencing court to enhance a defendant's sentence based on a victim's "serious psychological injury." While most of the offense variables relate directly to the circumstances surrounding the crime, OV 4 considers the emotional impact of the crime on the victim. In MCL 777.34, the Legislature instructed that when scoring OV 4, the sentencing court has two options:

(1)     Offense variable 4 is psychological injury to a victim.   Score offense variable 4 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a)     Serious psychological injury requiring professional treatment occurred to a victim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 points

(b)     No serious psychological injury requiring professional treatment occurred to a victim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0 points

(2)     Score 10 points if the serious psychological injury may require professional treatment.  In making this determination, the fact that treatment has not been sought is not conclusive.

This language unambiguously reserves a 10-point score for circumstances in which the victim's psychological injuries qualify as "serious" and enduring.  In my view, the injuries must transcend those that occur *during* a criminal act.

MCL 777.34 omits any definition of the term "serious psychological injury requiring professional treatment."  When construing this language, a court must ascertain and give effect to the Legislature's intent.  *People v Blunt*, 282 Mich App 81, 83; 761 NW2d 427 (2009).  "The first step in that determination is to review the language of the statute itself."  *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002) (quotation marks and citation omitted).  In discerning legislative intent, "this Court gives effect to every word, phrase, and clause in the statute."  *People v Hill*, 269 Mich App 505, 515; 715 NW2d 301 (2006).  Often, a statutory word or phrase "is given meaning by its context or setting."  *G C Timmis & Co v Guardian Alarm* Co, 468 Mich 416, 420; 662 NW2d 710 (2003) (quotation marks omitted).  Our interpretation of the statutory language is also appropriately informed by dictionary definitions.  *People v Hill*, 486 Mich 658, 668; 786 NW2d 601 (2010).  "[W]hat a court should do in construing a term in a criminal statute for which there are a variety of potential definitions is to determine from among those definitions which the Legislature most reasonably intended by the specific context in which the term is found."  *Id*. at 669.

I first consider the term "psychological injury."  The word "psychological" refers to a person's mental or emotional state.  *New Oxford American Dictionary* (3d ed, 2010), p 1409.  The word "injury" describes "an instance of being injured," which in turn encompasses being "harmed, damaged, or impaired."  *Id.* at 895.  Thus, "psychological injury" denotes harm, damage or impairment of an individual's feelings, emotions, behaviors, or sense of personal dignity.  Anger, fear, anxiety, depression, preoccupation, nightmares and sleeplessness manifest a person's troubled psychological state, and qualify as apt descriptors of psychological injury.

Surely only an exceedingly rare victim remains emotionally detached during and after the commission of a crime.  Whether the offense entails a larcenous theft of one's favorite watch or staring into the barrel of a loaded automatic weapon, "psychological injury" of some degree is expected.  Indirectly, the sentencing guidelines capture the gradations of psychological injury associated with crime by incrementally increasing the punishments for offenses likely to cause more lasting emotional harm.  For example, armed robbery is a terrifying and powerfully

personal crime. Accordingly, armed robbery carries a more severe sentence than larceny from the person, despite that the immediate psychological reactions of the victims may be equally intense. Similarly, first-degree home invasion, MCL 750.110a(2), (5), merits a longer minimum sentence than burglary, MCL 750.110a(3), (6).

Indisputably, all crime victims experience mental trauma. Just as no two crimes are exactly the same, different victims react in different ways. Some can put a ghastly event behind them and carry on with their lives. Others suffer more severe emotional trauma than would be reasonably foreseen given the nature or circumstances of the crime. OV 4 enhances a defendant's sentence based on a victim's emotional response to a crime, foreseeable or not. However, the plain language of this variable limits its breadth. Ten points may be scored only when the psychological injury qualifies as "serious," and only when that serious injury disrupts a victim's life or functioning such that psychological treatment "is required." Had the Legislature intended that a sentence enhancement would automatically attach to every crime causing any psychological injury, it would not have included the terms "serious" and "requiring professional treatment" in OV 4.

Furthermore, scoring based on psychological injury is an all or nothing proposition. Either 10 points are scored because "[s]erious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(a), or zero points are scored, signaling that "[n]o serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(b). I doubt that the Legislature intended the zero-score option to mean that some victims emerge from a crime utterly emotionally unscathed. Many crimes, including robbery, carjacking, stalking and assault, include fear as an element. Other crimes, including home invasion and criminal sexual conduct, naturally and inevitably cause psychological injury. Despite that crime and psychological injury usually go hand-in-hand, the Legislature placed the threshold for sentence enhancement on "serious" injury that "requires professional treatment." This plain language shifts the focus from the emotional reaction experienced by a victim while the crime is in progress to the longer-term psychological consequences of a criminal act.

*The New Oxford American Dictionary* (3d ed, 2010), p 1595 characterizes "serious injury" as "significant or worrying because of possible danger or risk; not slight or negligible." Synonyms for the word "serious" include "grave," "weighty," and "not . . . trifling." *Webster's New World College Dictionary* (5th ed, 2014), p 1326. I believe that by using the word "serious" to modify "psychological injury," the Legislature intended to distinguish between baseline psychological injuries, and psychological injuries that are of a degree or magnitude greater than that baseline. Our Supreme Court's opinion in *People v Hardy*, 494 Mich 430, 440; 835 NW2d 340 (2013), buttresses my conclusion.

The defendant in *Hardy* challenged the scoring of 50 points under OV 7, which in that case pertained to whether the perpetrator engaged in " 'conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.' " *Id.* at 434, quoting MCL 777.37(1)(a). The Court began by reviewing the definitions of the relevant statutory terms. "Designed," the Court explained, "means 'to intend for a definite purpose.' " *Id.* (citation omitted). The Court next considered the term "substantially increase." Citing a dictionary, the Court described the word "substantial" as designating an " 'ample or considerable amount, quantity, size, etc.' " *Id.* (citation omitted). "To 'increase,' " the Court continued, "means 'to

-3-

make greater, as in number, size, strength, or quality; augment.' " *Id*. at 440-441 (citation omitted). With these definitions in hand, the Supreme Court summarized: "it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety *greater by a considerable amount*." *Id*. at 441 (emphasis added).

In *Hardy*, the Supreme Court specifically advised: "absent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables." *Id*. at 442. Further, and directly relevant to my analysis of OV 4, the Court elucidated:

> [W]e agree with the Court of Appeals that "[a]ll . . . crimes against a person involve the infliction of a certain amount of fear and anxiety." Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. . . . [A]ll relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount. [*Id*. at 442-443 (second and third alterations in original, emphasis in original).]

Applying this analytical framework to OV 4, I believe that a court considering whether a victim has sustained "serious psychological injury" must first acknowledge that every crime victim suffers emotional trauma. That trauma, however, merely sets the stage for a deeper evaluation of the victim's enduring mental state. The Legislature aided courts engaged in this endeavor by designating only a particular subsection of emotional injuries that merit scoring: "serious psychological injury requiring professional treatment." MCL 777.34(1)(a). The victim's failure to actually seek treatment does not prevent scoring 10 points for this offense variable. MCL 777.34(2). That treatment remains unrequested, however, does not eliminate that the injury must be grave or weighty enough to warrant professional intervention.

Why did the Legislature add the "professional treatment" qualifier? This language signals the Legislature's intent to reserve a 10-point score for cases in which a victim's serious psychological injury produces a consequent need, whether fulfilled or not, for professional care. In other words, the Legislature sought to punish more severely when a defendant's crime disrupts a victim's ongoing emotional life. In reaching this conclusion, I have taken careful note of the word "requiring," which may not be ignored in coming to an understanding of this offense variable. To require is to "cause to be necessary." *The New Oxford American Dictionary* (3d ed, 2010), p 1483. As an adjective, "required" means "officially compulsory, or otherwise considered essential; indispensable." *Id.* I glean from the Legislature's conjoining of the words "requiring" and "professional treatment" that to merit a 10-point score under OV 4, a victim must have sustained mental or emotional harm that was grave enough to warrant professional care.

Whether the mental and emotional trauma experienced by a victim meets this standard depends on the existence of evidence supporting a psychological injury other than the emotional upset accompanying the crime. To warrant a 10-point score, the level or degree of psychological injury must be serious enough to require treatment, even if no treatment has been sought. Given our Supreme Court's command in *Hardy*, a preponderance of record evidence must justify a court's finding in this regard. When calculating the sentencing guidelines, a court may consider all record evidence, including the presentence investigation report, the defendant's admissions at a plea proceeding, and evidence introduced during a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). A victim's impact statement, affidavits, therapy records, the victim's testimony at sentencing (or that of a family member) also would suffice. See *People v Uphaus*, 278 Mich App 174, 183; 748 NW2d 899 (2008).

Like the majority, in considering the interpretation of the term "serious psychological injury requiring professional treatment," I have borne in mind the prosecution's citation to *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004): "Because the victim testified that she was fearful during the encounter with defendant, we find that the evidence presented was sufficient to support the trial court's decision to score OV 4 at ten points." In the past decade, many of this Court's unpublished decisions have taken this single sentence out of context and inflated its meaning. *Apgar* does not stand for the proposition that normal fear amounts to a serious psychological injury. Rather, *Apgar* involved a horrific, terrifying kidnapping and forcible sexual assault of a 13-year-old girl by a group of men. *Id.* at 324. The victim in *Apgar* suffered a severe psychological trauma grave enough to require professional care, without regard to whether her parents actually secured such treatment.

The evidence in this case amply demonstrated that the victim was shocked and fearful during and after the robbery, as would be expected under the circumstances. The officer's documentation that the victim appeared "visibly shaken" when the police arrived confirms that she sustained a psychological injury at that time. No record evidence suggests, however, that the victim's psychological injury was lasting, serious, or endured beyond the day of the robbery. Not only does the record fail to support that she needed or sought professional treatment, evidence of the victim's long-term psychological state is nonexistent.

The majority correctly holds that because the record evidence failed to demonstrate that the victim sustained a serious psychological injury, OV 4 should not have been scored. I respectfully posit that the inquiry mandated under this variable is far more detailed than the majority opinion would suggest. Absent an evidentiary foundation that a victim's psychological injury is truly "serious" and life affecting, OV 4 must be scored at zero points.

/s/ Elizabeth L. Gleicher